IN THE MATTER OF PROBATE OF WILL OF TOLMAN WILTSEY, DECEASED. SPENCER WILTSEY and JOHN MONROE, Proponents and Appellants, v. ANNA WILTSEY, AS ADMINISTRATRIX OF THE ESTATE OF EUGENE WILTSEY, DECEASED, Contestant.

**Administrators:** FAILURE TO FILE BOND: JURISDICTION: COLLATERAL
1 ATTACK. The mere failure of an administrator, to whom letters have issued, to file his bond before instituting a proceeding in his representative capacity will not deprive the court of jurisdiction, nor subject the appointment to collateral attack in such proceeding; but the same may be filed and approved after the objection has been raised, especially where no prejudice can result.

**Evidence:** SHORT HAND NOTES OF REPORTER. The short hand notes
2 of evidence taken in the trial of a will contest, in which the court erroneously substituted as contestants the widow and heirs of a deceased contestant, are competent evidence in a retrial of the cause in which the widow as administratrix has been substituted.

**Admission of incompetent evidence:** HARMLESS ERROR. A cause
3 will not be reversed because of the admission of improper evidence, where there is other competent and uncontradicted evidence upon the question.

**Wills:** UNDUE INFLUENCE: MENTAL CAPACITY: EVIDENCE. On an is-
4 sue involving mental capacity of testator and undue influence in the execution of his will, the evidence is reviewed and held to require submission to the jury.

**Same.** In determining the question of undue influence in the exe-
5 cution of a will, the physical condition and strength of mind of the testator, as affected by illness, may be considered.

**Assignment of error:** STATEMENT OF EVIDENCE. Supreme Court
6 Rule 54 relating to an assignment of error on the ground of
   insufficiency of the evidence to support the verdict or finding,
   does not contemplate that the evidence in detail shall be set
   out in argument, but merely a concise statement of its sub-
   stance with an indication wherein it fails to establish the es-
   sential facts.

*Appeal from Hamilton District Court.*— HON. J. R.
WHITAKER, Judge.

TUESDAY, NOVEMBER 20, 1906.

REHEARING DENIED, FRIDAY, SEPTEMBER 27, 1907.

PROCEEDING for the probate of the will of Tolman Wilt-
sey, deceased, proposed for probate by beneficiaries named in
said will, and contested by the administratrix of the estate
of Eugene Wiltsey, alleged to be the natural son of deceased,
on the grounds of undue influence and want of testamentary
capacity.    There was a verdict for contestant, and from the
judgment refusing to admit the will to probate, the pro-
ponents appeal.— *Affirmed.*

*Wesley Martin* and *D. C. Chase,* for appellants.

*Boeye & Henderson,* for appellee.

McCLAIN, C. J.— I.    At the beginning of the trial it
was objected by proponents that the contestant had not quali-
fied as administratrix and had failed to give bond.    After
the examination of one witness for contestant
(who had the opening and closing), it was
made to appear that a bond had been filed
by the administratrix and approved by the
court.    The record evidence introduced showed the appoint-
ment of contestant as administratrix of the estate of Eugene
Wiltsey, deceased, and the issuance of letters to her as such
administratrix with the will annexed prior to the commence-

ment of the trial, and that at the time of such appointment it was provided by the court appointing her that her bond should be fixed as required under further order of the court. The only questions are whether her appointment without bond being required or given at the time was void in such sense that the appointment could be collaterally attacked, and whether the error could be cured by the approval of her bond after the commencement of the trial.

In Code, section 3301, it is provided that the administrator, except as otherwise required, before entering on the discharge of his duties must give a bond and subscribe an oath the same in substance as the condition of the bond prescribed in the section, which oath and bond must be filed with the clerk; but we do not regard the giving of the bond as a jurisdictional matter. The requirement as to a bond is no doubt mandatory, and the failure of the court to require bond to be given may constitute error which may be taken advantage of in the proceeding for the appointment; but we do not think that a failure to require bond, or the postponement, as in the present case, of the fixing of the amount of the bond by the court, deprives the court of jurisdiction or subjects the order of appointment to collateral attack in a proceeding in which the administrator claims the right to act in pursuance of the appointment and letters issued to him. *Beresford v. American Coal Co.,* 124 Iowa, 34; *Seery v. Murray,* 107 Iowa, 384; *Bunce v. Bunce,* 59 Iowa, 533. It seems to us that it would be wholly unreasonable to hold that after letters had been duly issued and the administrator had proceeded to act in the exercise of the authority which the letters issued in pursuance of a due appointment purported to convey, the court issuing the letters, when objection is made that no bond has been given, cannot cure any error which may have been committed in the proceeding by authorizing the giving of such bond and approving the bond so given. In the present case this was done before the court had proceeded further in the pending case

than to hear the testimony of one witness, and no prejudice whatever could have resulted to the appellants. They did not ask that this witness be recalled, or that they have any opportunity to question the sufficiency of the bond. They were content to proceed with the contest, relying upon the objection that the administratrix had no authority to make it, and their objection is manifestly unsound. We have held that, where the objection is made that no guardian *ad litem* for a minor party has been appointed, the error may be cured by subsequent appointment, in the absence of any showing of prejudice. *Webster v. Page,* 54 Iowa, 461; *Wickersham v. Timmons,* 49 Iowa, 267.

II. In a prior proceeding for the probate of this same will, in which Eugene Wiltsey during his lifetime appeared as contestant, claiming to be the illegitimate son of the tes-

2. EVIDENCE: short hand notes of reporter.

tator, his widow (now administratrix of his estate) and his children were substituted as contestants; and a judgment denying the probate of the will, based on a verdict finding that testator was unsound of mind when the will was executed, and was unduly influenced by the beneficiaries under the will to make disposition of his property in their favor, was set aside on appeal to this court, on the ground that, as the will disposed only of personal property, the substituted contestants, not being his personal representatives by law, could not maintain the contest. See *In re Wiltsey's Estate,* 122 Iowa, 423. On the retrial of the case, resulting in the judgment from which this appeal is taken, the contestant, who had in the meantime been appointed administratrix of the estate of Eugene Wiltsey, offered in evidence the transcript of the shorthand notes of the testimony of two witnesses given on the former trial, and such transcript was received over the objection of proponents. It is now claimed that this ruling was erroneous. Code Supp. 1902, section 245a (Acts 27th General Assembly, page 16, chapter 9, section 1), provides " that the original shorthand notes of the evidence or any

part thereof heretofore or hereafter taken upon the trial of any cause or proceeding, in any court of record of this State, by the shorthand reporter of such court, or any transcript thereof, duly certified by such reporter, when material and competent, shall be admissible in evidence on any retrial of the case or proceeding in which the same were taken, and for purposes of impeachment in any case, and shall have the same force and effect as a deposition, subject to the same objections so far as applicable." ·

The contention of appellants is that this was not a retrial of the cause or proceeding in which the testimony was originally given, because this contest is by the widow of Eugene Wiltsey as his administratrix, while the former contest was by her and the children in their own individual rights, and that therefore the evidence on the former trial was not taken in the cause or proceeding now pending; that is, that the present case or proceeding is not a retrial of the former contest, but is a new contest instituted by the administratrix.

But we think that this objection is not sound. The will was originally proposed for probate in 1900, and objection was made to the probate thereof by Eugene Wiltsey. The court erroneously substituted the widow and heirs of Eugene Wiltsey in that proceeding after his death, and the testimony taken was testimony in a proceeding in which there was an objection made by a competent party, but in which there had been an improper substitution of parties. After the reversal in this court the case went back for retrial of the same proceeding, in which there had been in the meantime a proper substitution of the administratrix of the original contestant. No new issues were raised, and the evidence taken on the former trial was as to the very matters determined on the subsequent trial. There was not a new proceeding to probate the will of Tolman Wiltsey, but there was simply such a substitution as to enable the court to properly proceed in that case. Now, it seems to us, that the proponents, who were the parties originally proposing the will

for probate, and still continuing in that capacity, cannot object that the testimony taken on the first trial is testimony which was taken in a different proceeding from that in which it was offered on the second trial.   The conclusion might be different if the first contest had been by the widow and children of Eugene Wiltsey, acting in their own right; but they were only substituted parties as representatives of Eugene Wiltsey, and the contest tried and disposed of was the contest of Eugene Wiltsey himself, and not a contest originally instituted by his widow and heirs.   The proceeding originally instituted for the probate of the will of Tolman Wiltsey is the proceeding in which the present trial was had, and we hold that it is the same proceeding as that in which the first trial was had, notwithstanding the fact that the parties substituted to represent him on that trial were in legal effect different from the party substituted as his personal representative in the present trial.

But, without regard to the correctness of the conclusion just indicated, we could not properly reverse for the error relied upon.   The witnesses whose testimony was introduced 3. ADMISSION OF by the transcript testified only as to the rela-
INCOMPETENT
EVIDENCE:     tionship between Eugene Wiltsey and Tolman
harmless
error.        Wiltsey; and, if their evidence were entirely excluded, there would still be in the record such uncontroverted evidence that Eugene Wiltsey was the illegitimate son of Tolman Wiltsey, generally and notoriously recognized by him as such during his lifetime, that a verdict based on any other conclusion would have been set aside as entirely without support in the evidence.   We are not justified in reversing a case because of the improper admission of evidence, where the result could not have been different had such evidence been excluded.   The error, if any, was without prejudice, and cannot be made the ground of reversal. *Dawson v. Wisner,* 11 Iowa, 6; *Braddy v. Lumery,* 11 Iowa, 29; *Blair Town Lot & Land Co. v. Hillis,* 76 Iowa, 246; *Newell v. Martin,* 81 Iowa, 238; *Haggard v. Independent*

*School Dist.,* 113 Iowa, 486, 492; *State v. McPherson,* 114 Iowa, 492, 501; *Owen v. Christensen,* 106 Iowa, 394, 400.

III.   At the conclusion of the evidence for the contestant, and again at the conclusion of the whole evidence, proponents moved for a directed verdict in their favor on account of the insufficiency of the evidence to sustain a verdict for contestants, either as to want of mental capacity or as to undue influence; and they now assign error in the overruling of these motions.   Without attempting to set out the evidence in full, it is sufficient to say that there was testimony tending to show that the testator, who was seventy-seven years of age, and had been in reasonably good health, was taken violently ill on Sunday, being seized with a dizziness from which he fell unconscious, and that this illness immediately resulted in a bowel complaint, accompanied with feverishness, incoherence, failure to recognize relatives, and extreme feebleness, confining him to his bed for eight or nine days, and culminating without any intermediate improvement in his physical condition, with his death at the end of that period.   During this time he was surrounded by the nephews and nieces who are the recipients of bounty under his will, and in their exclusive charge.   On Wednesday following the Sunday on which he was taken sick one of these relatives procured the attendance of a lawyer with the purpose of having the sick man make a will, but no will was drawn up on that day, nor on the following day when the lawyer returned, but on Friday a will was drawn and executed, disposing of the personal property of testator, and at the same time four deeds were executed disposing of his entire real property to these relatives.   Eugene Wiltsey, the illegitimate son of testator, resided within a short distance, but he was not called to the bedside of his father, and no mention of him is made in the will.   The nephews and nieces who surrounded testator during his entire illness seem to have had considerable anxiety as to whether he would

*Marginal note:* 4. WILLS: undue influence: mental capacity: evidence.

make a will, for he had declared previously that he had no intention of doing so.   On the other hand, there is some evidence to show that he was on bad terms with his illegitimate son, and had no particular desire that this son should inherit his property.

It is significant, however, that two relatives who are legatees to small amounts testify that on Thursday evening, after the second visit of the lawyer, testator declared to them that "they are after me to make a will.   I cannot make a will. I don't know what to do with my property at all.   I can't do anything with it.   I am too near dead.   A dead man can't make a will."   And their testimony as to the situation is somewhat corroborated by the circumstance that the relatives who received deeds to the real property seemed to think it safer to have conveyances made to them outright then to depend upon provisions in the will for their benefit. The testimony further tends to show that in the distribution of the real estate by these deeds, as well as in the designation of the legatees in the will, the testator was prompted from the beginning by inquiries, especially from a nephew and a niece who were most prominent in the proceedings, as to what the testator was to give to this one and to that one, and, so far as we can discover on a reading of the record, he never at any time made any independent statement as to who was to be a recipient of his bounty.   Suggestions being made to him, he would assent, modify, or negative, but he did not apparently proceed of his own volition to dictate the distribution of his property.   Indeed, it appears that legacies to two of the legatees were added after the will was drawn, on the suggestions of the nephew present that testator ought to do something for them.   The name of Eugene Wiltsey seems to have been suggested to the testator, with the question whether he was his sworn son, the implication evidently being that otherwise there was no obligation to make provision for him, and no such provision was made.

The testimony also tends to show that testator was en-

tirely unable by reason of weakness to sit up in bed or guide his own hand in affixing his signature to the will and the deeds, but that they were successively placed in front of him and his hand was guided by his nephew. There is some conflict in the evidence on this point, but the testimony to which we have just referred is strongly corroborated by an inspection of the instruments themselves, which have been certified to us for that purpose, and a comparison of the illegible scrawls which pass for testator's signature as compared with his signature when in good health as shown by other exhibits. Under these circumstances we have not the slightest doubt as to the necessity of submitting to the jury the question of undue influence. In determining whether the will represents the uninfluenced judgment and purpose of testator, or whether it is the result of surrounding influences brought to bear upon him, his physical condition and strength of mind as affected by illness may be taken into account. *In the Matter of the Will of Convey,* 52 Iowa, 197; *Bates v. Bates,* 27 Iowa. 110.

5. SAME.

With reference to testamentary capacity, the contention is not that testator was of unsound mind in the general acceptance of that term, but that by reason of his illness and his physical weakness he had not sufficient mental capacity at the time to make an intelligent disposition of his property, and we think there was sufficient evidence on this question to authorize the court to submit it to the determination of the jury. *Manatt v. Scott,* 106 Iowa, 203, 215; *Meeker v. Meeker,* 74 Iowa, 352; *In re Betts' Estate,* 113 Iowa, 111; *Phillips v. Phillips,* 93 Iowa, 615. The jury, in answer to special interrogatories, found both undue influence and want of mental capacity. If we could reach the conclusion that want of mental capacity was not sufficiently made out, nevertheless the verdict must stand on the other finding, which is unquestionably supported by the evidence. *In re Will of Selleck,* 125 Iowa, 678.

The other errors assigned are not argued, and need not, therefore, be considered.

An apparent misapprehension on the part of appellant's counsel as to the interpretation of rule 54 has rendered the appellant's argument in this case much more voluminous than is necessary. That rule provides that **6. Assignments of Error: statement of evidence.** " if the insufficiency of the evidence to sustain the verdict or finding, in fact or law, is assigned, the statement shall contain a condensed recital of the evidence in narrative form so as to present the substance clearly and concisely." Counsel for appellant have evidently interpreted this to require the setting out of the testimony of each witness in his examination in chief, cross-examination, and examination in rebuttal, but this clearly is not what the rule contemplates. Such a condensed narrative is exactly what the abstract is required to contain under rule 53. See cases cited under Code, section 4118. It is not necessary, nor is it desirable, that in the argument the evidence be thus set out in detail as to the testimony of each witness. What is required by rule 54 is that, where appellant relies on the insufficiency of the evidence, he shall give the substance of the evidence in narrative form, and not the testimony of the witnesses. *Steele v. Crabtree,* 130 Iowa, 313. He should compile from the testimony of the witnesses a connected narrative of what he relies on as shown by the testimony, with proper reference to the pages of the abstract; and, if he is insisting that there is a lack of evidence as to facts material to the sustaining of the verdict, he should indicate wherein the testimony of the witnesses fails to establish or tend to establish the facts essential to support the verdict. In this case appellant has in his brief and argument set out seventy-five pages of the testimony, which we could have read as easily in the abstract. A proper interpretation of the rule would in this case have very much reduced the charges for printing.

Finding no prejudicial error in the record, the judgment of the trial court is *affirmed*.

DEEMER, J. (concurring).— I agree to the conclusion, but not to the construction placed upon section 245a of the Code Supplement of 1902. I do not wish to announce the rule or be bound by an announcement that a special finding upon an issue for which there is no evidence whatever is cured by a finding upon another issue which there is evidence to sustain.