FRANK BROGAN et al., Appellees, v. CATHERINE LYNCH et al., Appellants.

WILLS: Testamentary Capacity—Guardianship—Presumption. One
1  who is under guardianship because of mental defect is presumptively incapable of executing a valid will. Evidence pro and con held to sustain the presumption. (See Book of Anno., Vol. 1, Sec. 11846, Anno. 68.)

WILLS: Undue Influence—Submission of Dual Issues. Testimony
2  which supports the issue of undue influence necessarily has material bearing on the supported issue of the testamentary capacity of an aged and infirm person, but both issues are properly submitted, on supporting testimony.

Headnote 1:  40 Cyc. pp. 1019, 1023.  Headnote 2:  40 Cyc. pp. 1321, 1322, 1326 (Anno.), 1331, 1332.

Headnote 1:  7 A. L. R. 604; 8 A. L. R. 1375; 28 R. C. L. 100.

*Appeal from Crawford District Court.*—J. A. HENDERSON, Judge.

JULY 1, 1927.

REHEARING DENIED OCTOBER 1, 1927.

Action to set aside an order admitting the will in controversy to probate.  Cause tried to a jury, the trial resulting in a verdict for the plaintiff-contestants.  From the judgment entered the defendant-proponents appeal.—*Affirmed.*

*Sims & Page* and *Salinger, Reynolds & Meyers,* for appellants.

*L. W. Powers,* for appellees.

DE GRAFF, J.—This case involves a will contest.  The defendants, nephews and nieces of the testatrix, are the beneficiaries named in the last will and testament of Catherine Kearns, who departed this life December 26, 1922.  The plaintiffs are nephew and niece of the testatrix, and on December 27, 1924, filed a petition to set aside the order of probate entered January 30, 1923.  The petition alleges the following grounds, to wit: 1st.  That said Catherine Kearns at the time of the execution of said pretended will was lacking testamentary capacity, and was of unsound mind.  2d.  That said pretended will was obtained by undue influence exercised by said beneficiaries in said pretended will.

The propositions upon which the beneficiaries under the will rely for a reversal involve the sufficiency of the evidence to sustain the verdict, and the correctness of certain instructions given by the trial court to the jury.  Primarily, a question of fact is presented.

The testatrix, at the time of her death, was nearly 90 years of age, and, until about 6 months prior to her death, lived alone in her home in the town of Vail, Iowa.  Her husband predeceased her.  No children blessed her marriage.  Her only heirs are the children of her three predeceased brothers.  The property struggle in this case is between the children (plaintiff-contestants) of Peter and Michael Brogan, brothers of testatrix, and the defendant-proponents, the children of James Brogan, brother of the testatrix.

It avails little, in a case of this character, to recite in detail the record facts; but at the point of approach it may be stated that, about six months before her death, and about the time she changed her residence from her own home to the home of her nephew, Peter T. Brogan, one of the beneficiaries of her will, a petition was filed to have a guardian of her person and property appointed, and upon this petition an order of appointment was entered. The decretal order bears date September 5, 1922, and recites, as a ground for the appointment of a guardian, that the said Catherine Kearns was, at the time of the commencement of said action, "a person of unsound mind and a proper person for whom a guardian should be appointed to care for her person and her property." The will in question was executed December 18, 1922, subsequent to the appointment of the guardian and during the pendency of the guardianship. It follows, therefore, that the testatrix, at the time of the making of her will, was, *prima facie,* incompetent to make a will. *Cahill v. Cahill,* 155 Iowa 340.

*1. WILLS: testamentary capacity: guardianship: presumption.*

True, the judgment and adjudication in the guardianship proceeding is not conclusive as to the mental condition of the testatrix at the time she made her will. *Reeves v. Hunter,* 185 Iowa 958. This rule of law was recognized by the trial court in its instruction to the jury in relation to this matter. The prima-facie case so established called for rebutting evidence. A presumption of fact, not of law, is involved. These are distinct and different legal concepts. See *Farnsworth v. Hazelett,* 197 Iowa 1367 (38 A. L. R. 814).

In a strict legal sense, a presumption of fact is not evidence of anything, and relates only to a rule as to which party shall first go forward and produce evidence sustaining a matter in issue. The principle is stated in *Peters v. Lohr,* 24 S. D. 605 (124 N. W. 853), wherein it is said:

"A presumption will serve as and in the place of evidence in favor of one party or the other until prima-facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence."

A court, in opinion, is privileged to put a few flowers in the legal vase by way of ornamentation, but in *Beeman v. Puget Sound T. L. & P. Co.,* 79 Wash. 137 (139 Pac. 1087), the

opinion invades the animal kingdom, to secure the metaphor to illustrate presumptions of fact, and it is said:

" 'Presumptions,' as happily stated by a scholarly counselor, *ore tenus,* in another case, 'may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts.' "

See, also, 22 Corpus Juris 156; *State v. Linhoff,* 121 Iowa 632; *Brannock v. Jaynes,* 197 Mo. App. 150 (193 S. W. 51).

The contestants, however, did not rely solely upon the presumption in question. There is evidence, fairly conclusive in character, that the testatrix, at the time of the appointment of the guardian, was suffering from senile dementia, and that her mental condition gradually grew worse. This disease is recognized as progressive in character. The record as to the acts and conduct of the testatrix is replete with indicia of mental, as well as physical, unsoundness. Clearly, there was a jury question.

The evidence shows that, prior to the execution of this will, the testatrix was childish. Her conversation was disconnected and incoherent. She was unable to care for herself or her ordinary household duties. She became confused as to the location of her own home when but a short distance from it. She could not understand why the bank would not let her have her own money after the guardian was appointed. She was quite forgetful, and would repeat the same conversation to the same person, and re-ask the same questions which had been answered at a prior time. She complained that her niece was stealing her dishcloths, and complained that people were trying to get into her house at night. We cannot escape the conclusion that was reached by the jury in this case. The decisions of this court in cases of this character are legion, but no purpose is served in reviewing them at this time. See *Jenkins v. Robison,* 194 Iowa 972; *In re Will of Jahn,* 195 Iowa 74; *Morrison v. McLaughlin,* 191 Iowa 474; *Dolan v. Henry,* 189 Iowa 104; *Duggan v. McBreen,* 78 Iowa 591; *Gates v. Cole,* 137 Iowa 613.

We now turn for a moment to the charge of undue influence. Through her guardian, John S. Brogan, one of the beneficiaries of the will, an attorney was secured, to prepare the

2. WILLS: undue influence: submission of dual issues. will; and after its preparation, he brought it back to a banker at Vail, with the request that he take it to Mrs. Kearns and have it executed. He did so. This was about eight days before her death. She was, at the time, bedridden, and in charge of a nurse. The banker testified that she was asked by him if she knew him (the banker), and if there were any others that she wanted to mention, other than the Brogans; that she read the will, and was asked if she wanted it that way; that she said, ''Yes.''

''I saw her put her mark on the will. I put my name on the will as a witness in the bedroom. I saw her and talked with her, and think she knew what she was doing, all right. Nothing ever occurred in my interviews with her to even suggest to me that she was of unsound mind.''

There is evidence that Mrs. Kearns requested her guardian to see an attorney and have a will prepared, although it does appear that she had been solicited to make a will by some of the beneficiaries. Mrs. Hanson, who had been acquainted with the testatrix for many years, and was a next-door neighbor, testified:

''The second time she came down [after she was moved to Peter Brogan's home], she said about the same as the first: that they wanted her to make a will, and she wouldn't do it. Her husband didn't make a will, and she wouldn't do it either.''

The question of undue influence, in a case of this kind, cannot be separated from the question of testamentary capacity; and conduct which might be held insufficient to influence unduly a person of normal mental strength might be sufficient to operate upon a failing mind. See *Monahan v. Roderick,* 183 Iowa 1; *In re Will of Overpeck,* 144 Iowa 400; *In re Will of Wiltsey,* 135 Iowa 430.

One other factor in this transaction may be noticed. The guardian occupied a fiduciary relation to the testatrix, and the jury could have found that the guardian was instrumental in having the instant will prepared and executed. The guardian was a beneficiary under said will. Under such facts, ''a suspicion arises that the benefaction may have resulted from the exertion of undue influence over the testator, rather than from his free volition. The strength of this suspicion necessarily de-

pends on the circumstances of each particular case.'' *Graham v. Courtright,* 180 Iowa 394. See, also, *Liddle v. Salter,* 180 Iowa 840.

It was proper for the court to submit the issue of undue influence, and also testamentary capacity. These are not inconsistent, in the sense that both could not be submitted to the jury. See *In re Will of Jahn,* supra; *In re Will of Van Houton,* 147 Iowa 725.

Special interrogatories were answered by the jury. First:

''Do you find the execution of the will was obtained as a result of undue influence? A. Yes.''

''Did the testatrix have testamentary capacity, as defined in the instructions, at the time of the execution of the will? A. No.''

Upon a review of the record, we conclude that the evidence, on the issues involved, presented a jury question, and that the instructions given by the court are not subject to legal criticism. The judgment entered on the verdict is—*Affirmed.*

All the justices concur.