IN RE ESTATE OF A. D. ANKENY.

No. 47027.

July 29, 1947.

E. E. Bachman and Merle L. Royce, both of Marshalltown, for appellant.

L. L. Brierly, of Newton, and Boardman, Cartwright & Druker, of Marshalltown, for appellees.

R. A. Rockhill, of Marshalltown, guardian ad litem for Neil Willia and Mabel Willia.

HALE, J.—A. D. Ankeny, age eighty-seven, died testate in Marshall county on April 24, 1945. His will, dated May 27, 1943, was offered for probate on petition of Marcia M. Gard. The will provided (1) payment of debts and funeral expenses (2) refers to the purchase of a marker for his cemetery lot (3) "All the rest, residue and remainder of my estate, real, personal, and mixed of which I may die seized or possessed, or to which I am entitled, I will, devise, and bequeath as follows" (4) "To my niece, Mary E. Willia," household and kitchen furniture and general contents of his home (5) to Mary E. Willia, $500 (6) various cash bequests of $500 each to Rolley E. Billman, Floyd Billman, Sadie Vagjrt, and Grace Benson Quigley (7) to the niece, Mary E. Willia, a tract of eighty acres (described) during the term of her natural life, remainder to her legal living children or heirs of their body, and in the case of the death of any of said children the surviving children of Mary E. Willia to receive the share of the deceased child or children, with direction to keep up the taxes and repairs (8) provides a sufficient fund shall be placed in trust for the Marietta Cemetery Association, the income of which shall be used for the upkeep of his cemetery lot; no item 9; (10) a bequest of $250 to the Y.M.C.A. and Y.W.C.A. at Pine Lake to be used for the erection of a cabin or some distinctive building (11) "All the rest, residue, and remainder of my estate of which I may die seized or possessed or to which I may be entitled, I will, devise and bequeath as follows: A. The net remaining estate to F. L. Meeker of Marshalltown, Iowa, and in case of his death to his wife, Caroline S. Meeker" (there is no subdivision of item 11 other than the one marked A) (12) the provision in the event of contest: contestant to receive no

portion of the estate (13) Marcia M. Gard appointed executrix of the will, and in case of her inability to serve that the court shall appoint some other suitable person as executor. The will was witnessed on the day of its date by W. A. Lane and G. B. Brown, both of Marshalltown.

Emma Billman, a sister and heir at law, filed objections to the probate of such will, alleging undue influence on the part of F. L. Meeker, who drew the will and who is named therein as a residuary legatee, asserting that there was a fiduciary relationship between A. D. Ankeny and Meeker, being that of attorney and client, setting out various alleged facts showing such relationship. The proponent, Marcia M. Gard, was a daughter of Meeker and at the time of the execution of the will was employed as a secretary in his office.

R. A. Rockhill, attorney, of Marshalltown, was appointed guardian ad litem for Neil Willia and Mabel Willia and filed answer for such minors. The guardian ad litem admitted certain paragraphs of the objections to probate and denied all allegations of the objections which are adverse to the interest of the minors, alleging the due execution of the instrument as to the seventh item of the will, being the devise of the real estate to their mother, now deceased.

Jury was waived and trial was had to the court. The only issue as found by the court was that of undue influence alleged to have been exercised upon the testator by F. L. Meeker, draftsman of the will and legatee thereunder, standing at the time in the relationship of attorney and client with the testator, and the court held that the burden of proof was upon the contestant. The court found as to item 11, heretofore set out, that the execution thereof was procured by undue influence as charged and was not at the time and is not the will of the testator and should be denied probate as such, setting out in full the item 11. As to the remainder of the will the court found that the same is entirely separable from item 11 thereof, and that the preponderance of the evidence is with the proponent, and the same was not executed by the exercise of undue influence but is the will of the testator and should be admitted

to probate as such. Judgment was entered accordingly, denying probate to item 11 and admitting the rest of the will to probate, postponing until a later date the matter of the appointment of an executor. From this ruling of the court Marcia M. Gard, proponent, appeals to this court.

We shall not undertake to review all the testimony. The decedent, Ankeny, was a widower, living in a house on the farm that he had owned for a number of years, and possessed of an estate as shown by the inventory appraisal of about $31,000. Total bequests, aside from the residuary estate, amount to about $19,000, leaving a residuary estate, after the payment of expenses, of about $10,000.

Contestant, eighty-five years of age, is a sister of decedent and lived on a farm about three miles from him. There were other relatives and there is no evidence that he was on unfriendly terms with those related to him, but rather, the contrary. It is claimed, and the evidence indicates, that decedent was on friendly terms with F. L. Meeker, attorney and draftsman of the will, who died on October 14, 1944, prior to the hearing on application for probate.

There was evidence of a prior will which at the time was destroyed, and according to the testimony of the daughter of Mr. Meeker the former will had contained a devise of land to Meeker and a doctor friend of the decedent. Decedent, at the time of the execution of the will, came alone to Meeker's office, where the will was dictated and written, read by the attorney, and then taken by Mr. Meeker, accompanied by the decedent, to a bank, where subscribing witnesses affixed their signatures. Neither of the subscribing witnesses saw any part of the will except the page containing the signatures.

There is no evidence that the decedent was of unsound mind and no charge is made to that effect. For a man of his age it appears that his business affairs were managed largely by himself and his health was good. After the will was executed and witnessed it was taken in charge by Mr. Meeker and was found in his lock box in the Security Savings Bank. Receipt for the will was retained by Mr. Ankeny and kept in his lock box at the Fidelity Bank along with certain bonds he

had purchased. There is no evidence that Ankeny ever saw the will after its execution.

There is much testimony as to incidents showing the relationship and feeling between Mr. Ankeny and his relatives and between him and the Meekers. He was on good terms with his sister and other relatives and there appears to have been no ill feeling between him and them. The feeling between deceased and the Meekers was friendly. Other matters of evidence will be referred to later.

I. Proponent assigns error in contestant's failure to establish by clear and convincing evidence that item 11 was obtained by undue influence, and she asserts in argument that where it appears that the testator was of sound mind when the will was made, and up to the time of his death a prosperous businessman, evidence of undue influence must be clear and convincing. Citing In re Estate of Townsend, 128 Iowa 621, 105 N. W. 110.

Proponent's argument is largely as to the amount of proof needed, but we are not so much concerned with the amount of proof as we are with the question of whether or not there was proof sufficient to authorize the submission of the case to the jury. In this case was there a fact question for the court? The general rules relating to the question of the submission of undue influence have been set out in our recent cases. See In re Estate of Eiker, 233 Iowa 315, 6 N. W. 2d 318; In re Estate of Brooks, 229 Iowa 485, 294 N. W. 735; In re Estate of Heller, 233 Iowa 1356, 11 N. W. 2d 586, and cases cited therein. Proponent cites a large number of cases in argument which we need only to mention: In re Estate of Ensminger, 230 Iowa 80, 296 N. W. 814; Brogan v. Lynch, 204 Iowa 260, 214 N. W. 514; Monahan v. Roderick, 183 Iowa 1, 166 N. W. 725; In re Will of Overpeck, 144 Iowa 400, 120 N. W. 1044; In re Will of Wiltsey, 135 Iowa 430, 109 N. W. 776; Worth v. Pierson, 208 Iowa 353, 223 N. W. 752, and others, in support of his argument as to the quantum of evidence. He also refers to the recent case of Glider v. Melinski, 238 Iowa 140, 25 N. W. 2d 379, which does not apply to the facts here.

In none of the cases cited by proponent are the facts such as they are in the present case, especially as to the question

of confidential relationship between attorney and client. There is no question that where such relationship exists the burden of proof is still upon the contestant, or that this relationship, standing alone, without attendant circumstances, is not sufficient to establish undue influence. We have carefully examined all the cases to which we have been referred, but each case in which the question of undue influence arises must depend upon its own facts.

■ Proponent argues that the contestant has failed to establish, by the quantum of proof necessary, that the item 11 of said last will and testament was procured by undue influence. He recites the four elements necessary to establish undue influence, claiming that there must be (1) a person unquestionably subject to undue influence (2) opportunity to exercise such influence and effect the wrongful purpose (3) a disposition to influence unduly for the purpose of procuring an improper favor and (4) the result clearly appearing to be the effect of the undue influence. No one can seriously question that these elements should appear, but they need not be established by direct evidence. Circumstantial evidence is sufficient.

The article in 30 Iowa L. Rev. 321, 323, on the subject of undue influence, cited by the proponent, sets out clearly the rules which should govern here. The article says, in referring to the elements which are necessary for a submission to the jury:

"Although none of these facts, or 'elements' taken separately are sufficient to raise the jury question of undue influence, taken together a sufficient enough doubt as to the influence operating at the time of the execution of the will may be raised in order to present it as a question of fact to the jury."

In argument proponent does not seriously question the fact that there was opportunity, and that circumstantial evidence can be relied upon to sustain the element of a disposition to influence unduly, nor can there be serious doubt that there was a result clearly appearing to be the effect of the supposed influence.

Proponent argues that the fact that testator had never sought to change the will during the interval of two years is strong evidence that the will expressed the testator's own desire rather than the influence of another, and cites a large number of authorities. We think this circumstance indicates very little, but it was one which might be considered by the court, which would also take into consideration that the will was in actual possession of the lawyer and beneficiary under the will. It was a fact in the chain of circumstances. Other matters were advanced in argument, and cases cited which need not be analyzed. Most of the authorities cited by the proponent are only the ordinary cases involving the question of undue influence and do not involve the question of fiduciary relationship. We are satisfied that under all the evidence there were sufficient facts shown to authorize a finding by the court sitting, as it did, as a jury. The court properly determined the contestant had met the burden of proof and had proved facts sufficient to authorize a verdict as argued by contestant.

Contestant places reliance upon the case of Graham v. Courtright, 180 Iowa 394, 161 N. W. 774, and also upon Haman v. Preston, 186 Iowa 1292, 173 N. W. 894. In the Graham case we held that an attorney in the drawing of a will acts in a confidential relation to the testator, he being specially called because of testator's long friendship with him. It is there held that as long as the inferences to be drawn from a given state of facts are in equipoise the question of undue influence is for the jury. The case does not hold that a presumption necessarily arises, but "* * * the existence of a confidential relation, such as that of guardian and ward, attorney and client, religious adviser and layman, and the like, affords peculiar opportunities for unduly exercising influence over the mind; and, where the dominant party in such relation initiates the preparation of the will, or gives directions as to its contents to the scrivener, or writes it himself,—in other words, is active either in its preparation or execution, and is made a beneficiary thereunder, —a suspicion arises that the benefaction may have resulted from the exertion of undue influence over the testator, rather

than from his free volition. The strength of this suspicion necessarily depends on the circumstances of each particular case." (180 Iowa 394, 407, 161 N. W. 774, 778.)

In the Graham case the bequest to the attorney constituted about one fifth of the property. In the present case the residuary estate amounted to at least one third of the testator's entire estate. In the case of Haman v. Preston, supra, 186 Iowa 1292, 1299, 173 N. W. 894, 896, the relation between the testatrix and one of the defendants was that of attorney and client. In that case the will was written by the attorney and signed by him as a witness. He was named executor and was in possession of the will from the time it was executed until the time it was filed for probate:

"These facts and circumstances cast some suspicions upon the transaction, and, under the holding in Graham v. Courtright, 180 Iowa 394, Liddle v. Salter, 180 Iowa 840, Hull v. Mitchell, 181 Iowa 51, and cases therein cited, were sufficient to require the submission to the jury of the question of undue influence."

The court held that direct evidence thereof was not necessary, and further stated:

"Courts look with disfavor upon transactions between attorney and client, and other persons occupying close confidential relations, which result in substantial advantage to the attorney or other fiduciary; and, while the relationship of attorney and client is not alone sufficient, yet, when considered in connection with other facts and circumstances, even though no direct evidence of misconduct on the part of the attorney is offered, it may justify setting aside the instrument. While, in this case, the property was given to the wife of the attorney, all of the transactions were had with him. It is our conclusion, therefore, that the motion to direct a verdict, and also the motion for a new trial, were properly overruled."

To summarize the facts, and as argued by contestant, the will was dictated and prepared by Meeker and under his direction. There was a long relationship of attorney and client

between Meeker and Ankeny and this relationship was in existence at the time the decedent's will was prepared. The will was retained by Meeker in his lock box under the direction and control of himself and by members of the Meeker family until after the death of Ankeny, after which the will was filed for probate by Marcia M. Gard. There was no statement by either the testator or Meeker to the witnesses that a substantial bequest was being made therein to Meeker.. To this extent there was secrecy. There was no relationship by blood between Meeker, or Meeker's wife, and Ankeny. Ankeny was eighty-five years of age when he executed the will in controversy, and the residue amounted to practically one third of the total estate. These are the arguments of contestant and we think these facts are sufficient to require the submission to the jury on the question of undue influence.

█ The court had a right to consider, in connection with the above facts, what might be termed a vigorous campaign by the Meeker family in an effort to maintain intimate relations with the decedent. After the death of Mrs. Ankeny the Meeker family commenced visiting testator and entertaining him on holiday occasions. They were constantly sending him postal cards and visiting him. This may have been the natural kindness toward an old man who lived alone, or it may have arisen from other reasons, but it added to and made stronger the relationship that existed between the decedent and his attorney.

Another circumstance emphasized by contestant, and which could be considered by the court, was the manner in which the will was executed. We know nothing and the record can show nothing other than the testimony of Marcia M. Gard, secretary and daughter of the principal beneficiary. While she was in another room during the conversation between her father and the testator, and supposedly occupied by her work, she testified that she heard all the conversation, occupying three quarters of an hour, during which time the client and attorney conversed, and that during that period of time she states that she was doing nothing other than listening to their conversation, and that she heard all; but the conversation to which she testified was very little. She remembers distinctly that her father said

that he wished the testator would have somebody else draft the will, and that this was repeated, but he did not take any steps toward having that done by some other attorney. The record indicates that more than four hours elapsed from the time the decedent entered the office, during which the will was dictated, prepared, and taken to the bank to be witnessed. No one was present in the office but Meeker, Ankeny, and Marcia M. Gard. While it is true that ordinarily the making of a will and the contents of such will are not made public, yet, in this particular case only the testator and the persons directly interested seem to have taken any part. If there was a feeling on the part of the attorney that another attorney should prepare the will, that feeling was not strong enough for him to make any attempt to have it so done. Throughout, no one besides himself, daughter, and testator had even a suggestion as to what the will contained. There was no opportunity for independent advice. This lack of independent advice is itself a circumstance to be considered by the jury. See Shaw v. Duro, 234 Iowa 778, 788, 14 N. W. 2d 241. Ordinarily, an attorney in a situation such as this, knowing that he was the beneficiary of a large part of decedent's property, would have taken steps at least to secure the taking of advice and the consultation with another attorney. The court had a right, under these circumstances, to feel that there was at least some indication that desire for gain had overcome not only the attorney's ethical ideas but his sense of prudence.

The court was the judge of the evidence of the only surviving witness to the circumstances surrounding the execution of the will and it was entitled to give to such evidence such weight as it considered proper. The execution of the will indicates circumstances that were at least unusual. The only evidence as to the reading of the will was that of the daughter, Marcia M. Gard, who said her father read the instrument, but there is no evidence that Ankeny himself read it. The will itself is irregular in construction.

II. Contestant argues that the court erred in declaring a partial invalidity of the will. The action of the court was not erroneous as a matter of law. Neither proponent nor con-

testant claims that this court has decisively ruled on this question. Yet we have intimated that this may be done. The rule seems to be (1) that one clause of a will may be set aside if the separate items are distinct and complete in themselves (2) that the separate severable items of the instrument by no reasonable construction could be affected by the taint of undue influence charged against an offending beneficiary (3) that such separate severable items make a bequest or devise to persons having a natural claim to a testator's bounty and (4) that the instrument is so drafted as to make a complete disposition of testator's estate, or, if the items of the purported will resulting from alleged undue influence relate to the residuary clause, that the remainder of the estate will be distributed under the laws of descent. We think that these conditions are met in the present case.

The various other items of the will can be carried out without reference to item 11. In the event that item 11 is set aside the result would be that the remainder of the estate would be distributed under the laws of descent. While there are states holding to the contrary, yet the large majority hold that when the above conditions are satisfied the court is justified in refusing probate to some particular clause. Without reviewing all the authorities cited, we refer to one of our most recent decisions, In re Estate of Hollis, 234 Iowa 761, 770, 12 N. W. 2d 576, 581, in which case the contest was based on fraud, duress, and undue influence. The statement of the court is as follows:

"There is considerable authority that fraud will cause an entire will to be set aside only if it affects the entire instrument and the setting aside will not prejudice innocent beneficiaries. While one should not be permitted to profit from his own wrong, others who are innocent should not suffer therefrom. 'A false and fraudulent statement by one of two beneficiaries under a will makes the will void as to the beneficiary who is guilty of the fraud, but not as to the beneficiary who is innocent of it.' 1 Page on Wills, Lifetime Ed., section 181."

See, also, In re Estate of Eiker, supra, where the subject

is discussed, but it was held, under the circumstances, and the jury were instructed, that the entire will was valid or invalid. While all parties hereto assert that Iowa has never definitely ruled on the subject, yet the sustaining of a will in part and admission to probate of remainder is not altogether unknown in our decisions. See In re Estate of Spahr, 210 Iowa 17, 230 N. W. 434, in which case item 3 was held invalid, not for undue influence but for uncertainty, but the remainder of the will was admitted to probate. However, while the question here may be new it has arisen in many states and been definitely decided.

"It is a rule of general application that if a will is valid as to some of its provisions and invalid as to others, and the valid provisions can be separated from the invalid, and upheld without doing injustice to any of the beneficiaries under the will, or defeating the general intent of the testator, the will must be sustained in so far as it is valid, even though the invalid provisions relate to or affect most or nearly all of the estate, except that otherwise valid provisions which are by their terms dependent upon invalid provisions must fail with the latter." 68 C. J., Wills, section 254.

The text then goes on, where the rule has been applied, and further states:

"Likewise, the rule has been applied in cases where some of the provisions of the will were void for undue influence, or as attempting to exempt the testator's estate from liability for a legatee's debts * * *."

The text quoted from Corpus Juris is supported by many cases cited therein.

See, also, 68 C. J., Wills, section 448, in which it is said:

"In the absence of statutory provision to the contrary, it is generally held that, where some of the provisions of a will are void for fraud or undue influence, which can be separated from the valid parts of the will without doing injustice to the beneficiaries, or impairing the general intent of the testator, the whole will is not rendered invalid, and the portions not affected with undue influence will be given effect."

See, also, 69 A. L. R. 1129, in which the text, supported by many authorities, states:

"The authorities, with but few exceptions, support the general proposition that parts of a will may be held valid and enforceable, notwithstanding the fact that other parts have been affected by undue influence and are invalid; provided, however, that the parts so affected are separable, so that the will remains complete and intelligible in itself."

The question is raised in argument that under the issues the will must either be sustained in full or rejected, but the issue was raised in the answer of the guardian ad litem where he affirmatively alleges the due execution as to item 7—the devise to the minors—but admits certain objections made by the contestant. The matter of the partial invalidity of the will was thus directly in issue in the district court. We are satisfied there was no error of the court in denying probate to a part of the will.

III. Objection is made to the admission of certain testimony in relation to competency of a witness in relation to a key he was supposed to have obtained from Ankeny. The matter was immaterial and need not be considered here.

It is also claimed by the proponent that the court erred in disregarding the testimony of Marcia M. Gard and Theodore Martin. We fail to find that anywhere in the court's statement of the case and in its ruling there was such disregard, but even so, the court, like the jury, determines the credibility of the witnesses and the weight which should be given to their testimony. Circumstances surrounding the testimony of Marcia M. Gard were such that the court could take them into consideration, but the fact that the court did so disregard the testimony is not shown, and we need give this objection no further consideration.

The trial court acted as a jury. The appeal must fail, as the court acted on evidence properly tending to support its ruling. We hold that the confidential relationship existing between the testator and the lawyer who drew the will, together

with other circumstances, made a proper case for submission to a jury or to the court acting as a jury; that the court's ruling as to partial invalidity is correct, and so holding, that the case should be affirmed.—Affirmed.

OLIVER, C. J., and BLISS, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.