In the Matter of the ESTATE
OF Allan M. KREMER,
Deceased.

Eugene H. Kremer and Dennis Kremer,
Plaintiffs–Appellees.

v.

Bernard Bergfield and Larry
A. Troester, Defendants–
Appellants,

and

James Gordon, Jean Gordon, and
Kimberly M. Gordon,
Defendants.

No. 12–1662.

Court of Appeals of Iowa.

Jan. 23, 2014.

Todd J. Locher of Locher & Locher, P.L.C., Farley, for appellants.

Werner Hellmer and Sheila O'Laughlin of Day & Hellmer, P.C., Dubuque, for appellees.

Considered by VAITHESWARAN, P.J., TABOR, J., and SACKETT, S.J.*

SACKETT, S.J.

Appellants Bernard Bergfeld and Larry A. Troester (Proponents), two of the five nonrelative beneficiaries of decedent Allan Kremer's March 28, 2011 will, appeal from an adverse judgment in a will contest brought by Eugene H. Kremer, a brother of decedent, and Dennis Kremer, a nephew of decedent (Objectors). The proponents contend the district court erred in entering a judgment invalidating Allan's will after a jury found Allan competent to make the

will and further found that neither Bergfeld nor Troester had exercised undue influence on Allan. Objectors argue the findings by the jury that the other three beneficiaries, James Gordon, Jean Gordon, and Kimberly M. Gordon, executed undue influence on Allan were sufficient to invalidate the entire will including the two separate articles of the will that made bequests to Bergfeld and Troester. We affirm in part, reverse in part, and remand.

**SCOPE OF REVIEW.** A will contest is an action at law so we review for errors at law. *In re Estate of Lachmich,* 541 N.W.2d 543, 545 (Iowa Ct.App.1995). The jury's findings of facts are binding on us if supported by substantial evidence. *Id.*

**BACKGROUND.** Allan Kremer was born on August 15, 1922, and died on April 15, 2011. He never married and had no children. His estate consisted primarily of Iowa farmland, livestock, and the tools of farm husbandry. He executed prior wills in 1982 and in 2007 making provisions for siblings, nieces and nephews, religious organizations, and friends. The will prior to the one in question was executed on January 8, 2007. Glenn Bartelt, Allan's attorney for some years and the person who prepared the January 8, 2007 will, indicated Allan began talking of changing this will as early as the fall of 2007, although Allan said he was not settled as to how to do it.

Allan scheduled an appointment with Bartelt on March 16, 2011. Allan came to the appointment alone and told Bartelt he wanted to change his will. Allan indicated he wanted Bergfeld to have his home place, and if Bergfeld died before he did, then that property should go to Bergfeld's wife and children. Allan also related he wanted Troester to receive the residue of

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

his estate and Bergfeld to be the executor of his estate, with Troester to be the successor executor. Allan also discussed with Bartelt bequests for the three Gordons. Bartelt told Allan because he was giving his property to nonrelatives the inheritance tax would exceed the residue of the estate. Allan told him he wanted Kimberly Gordon and Bergfeld to be responsible for their inheritance tax and provision should be made in the will to allow them to borrow against the real estate he would give them to pay the tax.

Bartelt mailed a proposed will to Allan on March 22, 2011. On March 28, 2011, Allan met with Bartelt in Bartelt's office. Apparently James Gordon drove him to Bartelt's office. Allan and Bartelt discussed the draft will, some changes were made to the draft, and Allan signed the will before two witnesses and Bartelt. Gordon was not a party to the discussion nor was he present when the will was signed.

The will Allan signed made separate specific provisions for persons he called friends, namely Bernard Bergfeld, Larry A. Troester, James Gordon, Jean Gordon, and Kimberly M. Gordon. He made specific bequests of real and/or personal property to Bergfeld and the three Gordons. He directed the rest, residue, and remainder of his estate go to Troester. Troester had been named as a residuary beneficiary with certain of Kremer's nieces and nephews in an earlier will.

Allan's will also contained the following paragraph:

I intentionally make no provision for my surviving siblings or my nieces or nephews, not because of any lack of regard for them, but instead I have chosen to leave my property to the people who have been close to me and helpful to me especially in the last years, espe-cially since the death of my brother Francis.

Bartelt was to relate that he knew Allan for some thirty years and when Allan signed the will he was unchanged from how Bartelt had known Allan in the past. While Bartelt testified Allan had seemed a little old for his age in 1980, he stated that at the time he signed the will, Allan was hale and hardy and there were no signs of illness, and he seemed largely unchanged except for a complaint of pain. Bartelt also testified that Allan did not tell him about an apparent diagnosis of myeloma. Two weeks after signing the will Allan was dead at age eighty-eight.

The March 29, 2011 will was admitted to probate and Bergfeld, named as executor in the will, was appointed executor. An inventory of the estate filed in September of 2011 showed a value of approximately $2,400,000. An inheritance tax return prepared in late 2011 showed that for inheritance tax purposes under the 2011 will, James and Jean Gordon's share of the estate would be $6111.11; Kimberly Gordon's share would be $1,099,490; Bergfeld's share would be $977,854.32; and Troester's share would be $182,340.47.

Dennis Kramer, Allan's nephew and a beneficiary under a prior will, and Eugene H. Kremer, one of Allan's siblings, in May and August 2011 filed separate petitions to set aside the probate of the will, contending Allan did not have sufficient capacity to execute the will, and the will was the result of undue influence asserted upon him. Attorney Todd J. Locher representing all five beneficiaries filed answers denying the allegations that Allan was incompetent and had been unduly influenced.

An eleven-day jury trial was held and considerable conflicting evidence introduced. The district court proposed a number of jury instructions. The Proponents objected to the last sentence of what is

referred to in the record as jury instruction 15. Jury instruction 15 was identical to Iowa Civil Jury Instruction 2700.5, except for the addition of a final sentence.

Proponents objected to an added last sentence that provided, "The entire Will is invalid if procured by undue influence." Proponents contended the last sentence deviated from the uniform instruction and the added language was a misstatement of the law. They argued that trial courts should generally adhere to the uniform instructions. The Proponents also argued the sentence did not accurately reflect the Iowa law in that Iowa has recognized the doctrine of partial invalidity of a will. When asked by the district court where the parties' portion would go if the jury found one or more parties influenced the testator, counsel responded those parties' portion would go to the residuary beneficiary in order to comport with the intention of Allan that his friends get his estate. The district court overruled the Proponent's objection and left the questioned sentence in Instruction 15.

The jury was instructed to answer seven specific questions with a yes or no. In Question Number 1 the jury was asked "Did Allan M. Kremer have the proper mental ability to make and execute the Will on March 28, 2011?" The jury answered this question, "Yes."

The jury then was asked six separate questions, numbers 2 to 7, concerning the separate conduct of the five Proponents and the conduct of the Proponent Bergfeld's wife, Kimberly. The five questions directed to the conduct of each of the five Proponents were all the same except each question asked about an individual proponent. The question was, "Did Defendant–Proponent [Name] unduly influence Allan M. Kremer to make and execute a new Will on March 28, 2011?"

To the three questions directed to the conduct of each of the three Gordons, the jury answered, "Yes." To the questions concerning the conduct of the other two Proponents, Bergfeld and Troester, the jury answered "No." The question as to the conduct of Kimberly Bergfeld was the same except the question did not refer to her as a "Defendant–Proponent" as it did to the five Proponents. The answer to that question regarding her conduct also was, "No."

At 2:07 p.m. on August 22, 2012, the verdict form with the jurors' answers and signed by eight jurors was filed. At 3:31 p.m. the same day the district court filed the following judgment entry:

The jury, having returned a verdict finding that the decedent, Allan M. Kremer, was unduly influenced when he changed his will on March 28, 2011, the Court finds that the will attached to the petition for probate of will is set aside and held for naught. Upon proper application of the executor or his successor, the court will entertain the issue of what, if any, will should be probated or whether this matter should be declared an intestate estate. Court costs for this litigation are assessed against Kimberly M. Gordon, James Gordon, Jean Gordon, Bernard Bergfeld, and Larry Troester, jointly and severally.

On September 6, 2012, the five proponents served, and on September 7, 2012, they filed a notice of appeal stating that it included, but was not limited to, an August 2012 ruling on their motion for a directed verdict, a jury instruction, the August 22, 2012 judgment entry, and other adverse findings. The Objectors did not file a cross-appeal. On April 13, 2013, the three members of the Gordon family dismissed their appeal.

**ISSUES ON APPEAL.** Proponents contend the district court erred in (1) in-

validing the entire will despite a finding Allan was competent and they did not exercise undue influence, (2) instructing the jury that invaliding one part of the will invalidates the entire will, and (3) allowing inadmissible hearsay evidence.

■ **INSTRUCTION 15.** Proponents clearly objected to the last sentence of Instruction 15, which provided:

> Undue influence means a person substitutes his or her intentions for those of the person making the Will. The Will then expresses the purpose and intent of the person exercising the influence, not those of the maker of the Will. Undue influence must be present at the very time the changes to the Will are made and must be the controlling factor. The person charged with exercising undue influence need not be personally present when the Will was being made or signed but the person's influence must have been actively working at the time the Will [was] made or signed. *The entire Will is invalid if procured by undue influence.*

(Emphasis added.)

In the case of *In re Estate of Ankeny,* 238 Iowa 754, 28 N.W.2d 414, 420 (1947), the court said,

> It is a rule of general application that if a will is valid as to some of its provisions and invalid as to others, and the valid provisions can be separated from the invalid, and upheld without doing injustice to any of the beneficiaries under the will, or defeating the general intent of the testator, the will must be sustained in so far as it is valid, even though the invalid provisions relate to or affect most or nearly all of the estate. . . .

In making the objection, the Proponents alerted the district court to Iowa precedent indicating that the actions of one or more beneficiaries in executing undue influence does not necessarily invalidate the entire will if certain factors are met. *See Ankeny,* 28 N.W.2d at 420–21. Namely, the case states that if a will is valid as to some of its provisions and invalid as to others, the valid provision can be separated from the invalid and upheld if this can be accomplished without doing injustice to any of the beneficiaries under the will or defeating the general intent of the testator. *See id.*

Also, *In re Estate of Hollis,* 234 Iowa 761, 12 N.W.2d 576, 581–82 (1944), stated,

> There is considerable authority that fraud will cause an entire will to be set aside only if it affects the entire instrument and the setting aside will not prejudice innocent beneficiaries. While one should not be permitted to profit from his own wrong, others who are innocent should not suffer therefrom. "A false and fraudulent statement by one or two beneficiaries under a will makes the will void as to the beneficiary who is guilty of the fraud, but not as to the beneficiary who is innocent of it."

(Citation omitted.) *See also In re Estate of Spahr,* 210 Iowa 17, 230 N.W. 434, 435 (1930) (holding that the invalidity of one paragraph of a will does not require the entire instrument to be denied).

It being a rule of general application in Iowa that if a will is valid as to some of its provisions and invalid as to others, and certain other factors are present as discussed above, the will must be sustained so far as it is valid. The district court erred in adding over Proponents' objection the last sentence to Instruction 15. *See Ankeny,* 28 N.W.2d at 420–21.

**INVALIDATION OF THE WILL.** Proponents contend that the entire will should not have been invalidated. Objectors contend that error was not preserved on this issue, nor was it preserved in the challenge

to Instruction 15. Besides contending the objection to the last sentence of Instruction 15 preserved error, the Proponents further contend that the district court erred in overruling their objection to the instruction and erred in instructing the jury that the entire will is invalid if procured by undue influence. They contend the language objected to is not included in the uniform instruction and, additionally, is not the law of Iowa.

Proponent's clearly objected to the last sentence of paragraph 15 because it was not the law of Iowa. In making the objections the Proponents also cited to the district court authority cited above for their position.

■ We find it was error for the district court to immediately invalidate the will. While there may be situations where actions by one beneficiary support invalidation of the entire will, here there is no factual finding by the jury that the actions of the three Gordons caused the bequests to be made to the other two beneficiaries. Nor did the district court make any such findings.

In the recent case of *Burkhalter v. Burkhalter*, 841 N.W.2d 93, 105 (Iowa 2013), a case involving a charge of undue influence, the Iowa Supreme Court considered whether a court's instruction that causation must be clearly proved is consistent with Iowa law. The court concluded a requirement that causation be clearly established is not inconsistent with the preponderance of the evidence standard generally applying to the other elements of undue influence and it declined to abandon the "clearly" requirement in causation. *See Burkhalter*, 841 N.W.2d at 105. While we recognize that *Burkhalter* was decided after this case was tried, it points to the fact it has long been held that causation must be considered in an undue influence

case. *See id.* (citing *Ankeny*, 28 N.W.2d at 417).

■ There was no finding, nor did Objectors appear to have asked for a finding here, that the Gordons' undue influence caused decedent to give property to Bergfeld and Troester. Objectors did not cross-appeal, but as the prevailing party they can raise an alternative ground for affirmance on appeal without filing a notice of cross-appeal as long as they raised the ground in the district court. *See Duck Creek Tire Serv. v. Goodyear Corners*, 796 N.W.2d 886, 893 (Iowa 2011). We need not decide whether this issue was preserved in the district court for even if it were Objectors would fail. They had the burden of proving Bergfeld and Troester exercised undue influence.

The jury made the factual determination that Allan had the capacity to make the will and that Bergfeld and Troester did not exercise undue influence. The will indicates that Allan desired to reward those who had been close to him and helped him in his last years. The record is replete with evidence of the long-time close relationship between Troester and Allan and the assistance Troester gave Allan. Likewise, there is evidence of the assistance Bergfeld provided Allan in his last years. Granted some of the Proponents' evidence was challenged by Objectors and some of Objectors' was challenged by Proponents, but it was the jury's charge to make the credibility findings. Objectors have failed to show us why we should reject those findings in addressing the issues before us. The only conclusion we can reach from the jury verdict is that Bergfeld and Troester did not exercise undue influence and, as innocent parties, should not suffer. *See Spahr*, 230 N.W. at 435.

In *Ankeny*, 28 N.W.2d at 419, after noting neither party to the appeal had claimed the court had decisively ruled on

the question of partial invalidity of a will, the court said it had intimated that it may be done. The court stated the rule seemed to be: (1) a clause or clauses of a will may be set aside if the separate items are distinct and complete in themselves; (2) other separate items of the instrument by no reasonable construction could be affected by the taint of undue influence charged against an offending beneficiary; (3) the separate several items make a bequest or devise to persons having a natural claim to the testator's bounty; and (4) the instrument is so drafted as to make a complete disposition of testator's estate. *Ankeny,* 28 N.W.2d at 420.

■ These rules appear to apply here. First, the provision for each beneficiary was separate and distinct. After providing for the payment of funeral expenses and costs of administration, the will provided:

### ARTICLE II

I give to my friends James Gordon and Jean Gordon the pickup truck which I own at my death; and if one of them predeceases me, to the survivor of them; and if both predecease me, then to their daughter Kimberly M. Gordon. I direct that my Estate pay the inheritance tax levied on this bequest.

### ARTICLE III

I give to my friend and neighbor, Bernard Bergfeld, all my livestock and my "Home Place" farm of 300 acres, more or less, being all of the land I own in Sections 6 and 7 in Otter Creek Township, Jackson County, Iowa, if Bernard survives me; but if he does not, then to his wife, Kimberly Bergfeld, and his children, in equal shares, and if any of them fail to survive me, the share of such predeceased beneficiary shall lapse. The above description of this farm is sufficient to identify it, and I direct that my Executor substitute for the description herein the legal description thereof from the Deeds and Abstract.

### ARTICLE IV

I give to my friend Kimberly M. Gordon my Super H tractor (the one that has the 238 cultivator mounted on it) and my "Knapp Farm" of 280 acres, more or less, being all of the land I own in Section 4 of Otter Creek Township, Jackson County, Iowa and my "LaMotte Acreage," being all the land I own in Section 4 of Richland Township, Jackson County, Iowa, if Kimberly survives me; but if she does not, then to her parents, James Gordon and Jean Gordon, or all to the survivor of them, if one predeceases me.

. . .

### ARTICLE VI

I give to my friend, Larry A. Troester, all the rest of my property.

The bequests are clearly severable and there is no finding, nor was there a request for a finding, that the Gordons' actions may have tainted the other provisions of the will. Allan intended to give Proponents a claim to his bounty. Also significant is that the way the will was drafted there can be a complete disposition of Allan's estate because any property that did not pass by special bequest would pass under the residuary bequest to Troester.

The jury found Allan had the proper mental ability to make and execute the will of March 28, 2011. While this is no longer an issue, there is substantial evidence to support the jury's finding that he was competent. Allan's attorney met with him to talk about what he wanted in his will, discussed a draft with him, finalized the draft, witnessed him signing the document, and found Allan to be knowledgeable and understanding of what he was doing. Allan's doctor also testified Allan had decision-making capabilities at or near the time the will was signed.

Furthermore, based on the jury's finding regarding Allan's mental ability, there is no particular basis in the record to find the clause explaining the reason Allan did not leave property to his family was tainted by the Gordons' influence. This is in contrast to *In re Estate of Klages*, 209 N.W.2d 110, 114 (Iowa 1973), where the court rejected a request for partial invalidity, finding that upholding one part and rejecting another part of a will would defeat the presumed wishes of the testator for the disposal of his property or defeat the general intent of the testator.

Other factors that must be considered are that Objectors had the burden of proof and they failed to convince the jury that Bergfeld and Troester exercised undue influence. But equally, if not more important, is the intent of the testator.

Ordinarily, a construction is favored that brings a bequest in conformity with the laws of descent and distribution. *Porter v. Porter*, 286 N.W.2d 649, 655 (Iowa 1979). "However, rules of construction are subservient to the testator's written expression for ascertaining his intent." *See id.* at 655–56. All rules of testamentary construction are subservient and assistant to the cardinal and controlling rule that the intention of the testator is to govern. *See id.*

In *Elkader Production Credit Association v. Eulberg*, 251 N.W.2d 234, 237 (Iowa 1977), the court stated, "[T]he testator's intent is the polestar and if expressed shall control." Also, the testator's intent "must be gleaned from a consideration of all language contained in the will, the scheme of distribution, and facts and circumstances surrounding the making of the will". *Elkader Prod. Credit Ass'n*, 251 N.W.2d at 237. The jury found Allan had the proper mental ability to make and execute the will on March 28, 2011. Allan had the ability to make his will and from the will one can glean that he did not intend to provide for surviving siblings or nieces and nephews. He made it very clear he wanted his property to go to his friends.

Proponents also argue that the district court erred in allowing Troester to testify he learned from bar talk the Gordons were "bad news." We find it unnecessary to address this issue.

Therefore, we modify the district court's decision that the March 28, 2011 will of Allan Kremer be set aside and held for naught. The provisions for Kimberly Gordon, James Gordon, and Jean Gordon, namely Articles II and IV, are void. They have not challenged by appeal this finding by the district court. Therefore we need not and do not address whether the mere finding they exercised undue influence established the causation element. These provisions can be separated from the balance of the will without doing injustice to the other beneficiaries or impairing Allan's general intent. The will—absent the two Articles above—is the last will of Allan Kremer and is a complete will in itself.

Costs on appeal are charged to Objectors jointly and severally.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**