Smith v. Hickenbottom.

REVERSED.

*i*

## SMITH v. HICKENBOTTOM.

| 57 | 733 |
| 93 | 613 |
| 94 | 343 |
| 57 | 733 |
| f110 | 9 |

1. **Guardian**: PERSON OF UNSOUND MIND: EVIDENCE OF. In an action under section 2272 of the Code, for the appointment of a guardian of the property of a person of unsound mind, the evidence showed the defendant was very old, very infirm, bodily, and that his mind had shared in his physical disability. The jury found that the defendant was of unsound mind. *Held*,

    1. That the verdict was sustained by the evidence.
    2. That evidence of a conversation had by the witness with defendant, was competent to show his mental condition, and that he felt his inability to properly manage and protect his property.
    3. That it was not the expression of an opinion for the witness to testify, by way of illustrating the imbecility of age, that the defendant "talked like a child."
    4. That in cases of this kind, after stating the facts upon which their opinion is based, non-experts may be allowed to give an opinion as to the defendant's soundness or unsoundness of mind.

2. **Assignment of Errors**: NOT ARGUED: PRACTICE. An assignment of errors not argued, will not be considered.

3. **Expert**: HYPOTHETICAL QUESTION: CONFLICTING TESTIMONY. Where an expert was asked a hypothetical question, based upon facts in relation to which there was conflicting and contradictory testimony, and which virtually required him to place himself in the jury box and weigh the testimony, the exclusion of the question was not error.

4. **Mind**: UNSOUNDNESS OF: WHAT CONSTITUTES. An instruction, which distinguished unsoundness of mind from idiocy on the one hand and lunacy on the other, was correct. The statute designates three classes for whom guardians may be appointed, and the latter class must differ from either of the others. If, then, there is such mental weakness that the judgment cannot be trusted in the management of business, a guardian should be appointed.

*Appeal from Jefferson Circuit Court.*

FRIDAY, MARCH 24.

THIS is a proceeding under section 2272 of the Code, for the appointment of a guardian of the property of the defendant, Joseph Hickenbottom. · The plaintiff is a son-in-law of the defendant. He bases his application upon the ground that the defendant is of unsound mind. The defendant for answer denies that he is of unsound mind.

There was a trial to a jury, which found that the defendant was of unsound mind, and the court appointed a guardian accordingly. The defendant appeals.

*McCoid & West*, for appellant.

*Slagle & McCrackin* and *D. P. Stubbs*, for appellee.

ADAMS, J.—The defendant, at the time of the trial, was seventy-eight years of age. It appears that until he was past seventy years of age, he was by no means deficient in business capacity, and succeeded in accumulating considerable property. It does not, indeed, appear, that at the time of the trial, he had wasted his property to any considerable extent. But he had become, bodily, very infirm, and his mind, without any question, had shared somewhat in his physical disability. He seems himself at times to have been conscious of it, and expressed a wish that some-one would take charge of his property and relieve him from all care in respect to it. Some arrangement could doubtless have been effected, whereby his property and himself could have been properly cared for without the appointment of a guardian, and especially without litigation, if there had been harmony among his children. But one of the painful facts, which appears from the record, is the want of such harmony. The testimony is very voluminous, as usually happens in a closely

1. GUARDIAN: persons of unsound mind : evidence of.

contested case of such a character. The witnesses differ considerably, but, on the whole, we may say, that it appears to us, that the evidence sustains the verdict. We have all arrived at this conclusion, upon a separate reading, and it is unnecessary to set out and discuss the evidence in detail. It is claimed, however, that the court erred in the admission and exclusion of evidence and in giving instructions. ·

I. One Elizabeth Smith, a daughter of the defendant, was introduced as a witness, who testified in these words: "I remember a conversation with him (the defendant) last August, before this proceeding was instituted. I went to see him. He was sitting up and appeared like he was very much cast down. I shook hands with him and he turned into crying, and said the boys were not serving him right. I asked him why, and he said they were wasting his property, taking things from him; said he would like to have somebody come and take care of his property, that he could have the benefit of it in his old days to keep him." The defendant moved to exclude this evidence, but the court overruled the motion and he excepted.

We think that the evidence was not inadmissible. It tended, we think, in some slight degree, to show the defendant's mental condition. If he was laboring under a delusion in respect to his sons taking his property away from him, his statement tended to show that he was subject to delusion; and in any event, it showed that he felt unable to cope with his sons.

Some other objections are urged by the defendant's counsel, which we are not sure we fully comprehend. The evidence is said to be hearsay and very prejudicial. If the fact in question was as to whether the boys, so called, were taking the property, then evidence of anyone's statement that they were, would be hearsay, and not without prejudice *to them*. It is possible, indeed, that the boys, and not the defendant, are in reality making the defense in this case, but we are not allowed

to make such assumption and be guided by it in the application of the law.

II.   The same witness testified in these words: "He said, while we were there, that the boys had not treated him right; said he had money and did not know what went with it; he would like to get some person to come and take care of his property, and then he turned in and talked like a child." The defendant objected to the last clause because it contained the expression of an opinion. The court overruled the objection and the defendant excepted.

In our opinion the evidence was not subject to the objection It was not to be expected that the witness could repeat the defendant's words with entire accuracy, and if she could have done so, it might not have given an accurate idea of the defendant's state of mind. We can conceive that there was some what in his manner and general appearance which impressed the witness, and which she intended to describe, when she said he talked like a child. It is not easy to describe the imbecility of old age. The witness used an illustration. Descriptions are often given in this way. They may be indefinite and inadequate, but they are not usually regarded as expressions of opinion.

III.   Non experts were allowed, against the objection of the defendant, to give their opinion that he was of unsound mind.

In this we think that there was no error. They were allowed to do so only after stating the facts upon which their opinion was based. We see no reason why the same rule should not apply as in cases of insanity; and that non-experts may give an opinion in such cases upon the facts stated by them is well settled in this State, whatever may be the rule elsewhere. *Butler v. St. Louis Life Insurance Co.*, 45 Iowa, 97. The departure from the ordinary rule, which excludes opinions by non-experts, is deemed justifiable upon the ground that the facts testified to in respect to insanity, must often, in the nature of the case, convey to the jury a very inade-

quate idea of the ultimate fact to be found by them, and upon the further ground that the insanity of a person can often be detected by a non-expert, who is familiar with the person, almost as readily as by an expert.

Mental weakness or imbecility, amounting to unsoundness, cannot always, and perhaps cannot usually, where it is not of a marked character, be adequately shown to a jury by a mere statement of facts. The difficulty, we think, is not less than in cases of insanity, which are not of a marked character. So, again, the value of technical knowledge in detecting imbecility, amounting to unsoundness, it seems to us, is not greater, and perhaps is less, than in detecting insanity.

IV. A physician was examined as an expert, and to him a hypothetical question was propounded. Certain facts and circumstances were supposed, and the witness was then interrogated in these words: "What, in your opinion, is indicated as to the state of mind of this individual by these conditions and circumstances named in the question, and by these facts if testified to?" The defendant objected to the question as not being true to the facts as stated by the witnesses. The court overruled the objection and the witnesses answered: "If these actions and manifestations were prominent without a physical cause, temporary or permanent, then there would be evidences of mental weakness." The admission of this evidence is assigned as error.

*2. ASSIGN-ment of errors: not argued.*

Our rule is to consider no assignments of error which are not argued. All we find in the argument upon this assignment of error is in these words: "On page 70 a hypothetical question is admitted to Dr. Woods, which we urge is not true to the facts stated by the witnesses, and upon that an opinion is sought to be thrown into the jury box." This argument is nothing more in substance than a mere re-statement of the assignment of error. The facts supposed, related to the words and conduct of the defendant on certain occasions. They did not relate to all the words and conduct of the defendant as

shown in evidence, nor was it necessary that they should. We do not know that this constitutes the defendant's objection. Possibly it is that one or more of the facts supposed are not sustained by any evidence. But if this is the point relied upon, the facts should have been pointed out. In the absence of any argument upon the point, we do not feel called upon to say more.

V. Another physician was examined as an expert and asked a question in these words: "Now, then, you will state to the jury if the symptoms and indications testified to by the witnesses were proved, and if the jury were satisfied of the truth of them, I wish you to state whether, in your opinion, having heard all the symptoms and indications, Joseph Hickenbottom was of sound or unsound mind, and if unsound what is the nature and character of that unsoundness?" This question was objected to by the plaintiff, and the objection was sustained. In this, we think, that there was no error. There were not only conflicting symptoms and indications, and to such an extent as to evince in some measure an indirect conflict of testimony, but there was in some instances a direct conflict of testimony. The witness was asked virtually to place himself in the jury box and weigh the evidence.

3 EXPERT: hypo' hetical question: conflicting testimony.

VI. The defendant assigned as error the giving of the 2nd, 6th, and 7th instructions. The 6th and 7th are the only ones specifically referred to in argument, and are the only ones which we shall consider. In the 6th instruction the jury was told that the proceeding was a friendly one, not designed for the plaintiff's benefit, but for the protection and good of the defendant. In the 7th instruction, the court undertook to define unsoundness of mind. The court said: "The words 'unsound of mind' as used in the statute, and in the petition, and as must be contemplated by your verdict in this case, do not mean utter and unmitigated madness, or absolute and hopeless idiocy on the one extreme,

4. MIND: unsoundness of: what constitutes.

nor on the other such weakness and infirmity, even in extreme old age, as is liable to be influenced or imposed upon, nor the occasional belief of facts which no sane man would believe, provided there is still mind enough to discover the illusion or hallucination before it is acted upon, nor occasional spells or fits of delirium from sickness. The condition of mind, contemplated by these words, is beyond the latter, and may be within or short of the former of these extremes. The main, if not indeed the only, objects of this law and proceeding are the protection of the property and person of the defendant against the probable ill effects of their remaining under the control of a deluded mind, one believing and acting upon facts which have no existence but in the imagination. If, therefore, you find from a preponderance of the evidence that the condition of the defendant's mind is such as discloses incapability of exercising judgment, reason, and deliberation, of weighing the consequences of his acts and their effects, to a reasonable degree, upon his property, estate, family, and attendants, and his own person, it will be your duty to return a verdict that he is unsound of mind."

The objection urged to the instructions by the defendant is that they fail to give any proper definition of unsoundness of mind. He contends that unsoundness of mind is "a permanent adventitious insanity."

Without stopping to enquire whether there is any authority for such a definition we have to say that we do think it would be a proper one in this case. The statute provides for the appointment of a guardian of "an idiot, lunatic, or person of unsound mind." Three classes are designated, and we must presume that the latter class differs somewhat from either of the others. The definition insisted upon by the defendant, would make the latter class substantially identical with the second. We are aware that the word *lunacy* was originally used to denote periodical insanity, but it is not confined to that meaning now, and is generally regarded as having the

same extent of meaning as the word insanity. See Webster's Unabridged Dictionary. While, then, an idiot or lunatic is a person of unsound mind, a person may be of unsound mind and not be an idiot or lunatic. This was the view of the court below, and is beyond any question correct.

When we come to undertake to define precisely what is unsoundnes of mind, within the meaning of the statute, we meet with great difficulty. Weakness is not necessarily unsoundness, but there may be a weakness, short of idiocy, either congenital or superinduced by disease or old age, that amounts to unsoundness. It is within the observation of every one, that in extreme old age the mental powers oftentimes nearly fade out. Where this is so, we have a clear case of unsoundness of mind as distinguishable from idiocy or lunacy. But what is the measure of that weakness which amounts to unsoundness? It is not easy to say in precise terms. The weakness which does not amount to unsoundness shades off into that which does. Yet the statute must be applied to each given case, and practically the difficulty is not a very great one. The object to be accomplished by the statute is easily comprehended, and that constitutes the jury's best guide. The mental weakness of old age may or may not open the door to delusions. Where it does the judgment is ordinarily, we presume, less to be trusted than where it does not. But whether delusions are present or absent, if there is such mental weakness that the judgment necessarily required in the management of the defendant's ordinary affairs cannot properly be trusted, and the just protection of his property demands the legal substitution of another's judgment, such substitution ought to be made. The 7th instruction given expresses substantially this idea, and in giving it, we think that the court did not err.

We have examined the entire case, so far as its presentation calls for an examination, and we have to say that we see no error.

AFFIRMED.