IN RE PROBATE OF THE WILL OF ELIZABETH MARTIN, Deceased.

**Wills:** MENTAL UNSOUNDNESS: EVIDENCE. In this will contest on the
1 ground of undue influence and unsoundness of mind the evidence is
held to support a verdict of mental unsoundness.

**Same:** UNDUE INFLUENCE: EVIDENCE. Where a testator reposes confidence
2 and reliance in his attorney drawing his will and the attorney
secures some personal advantage, or some object in which he was
interested receives some benefit from the provisions of the will,
the burden rests upon the attorney to show that the transaction

was in good faith, in the absence of a reasonable explanation of the gift; but where he was called to advise concerning the most worthy objects of testator's bounty, and merely suggested a charitable purpose to which testator desired to give a portion of his estate, even though he took an interest in the organization of such charity, the evidence of undue influence was insufficient to take that question to the jury.

Same: SUGGESTIONS OF COUNSEL. It is the duty of a legal adviser to assist his client in arranging the disposition of his property by will, and to make suggestions to that end, leaving, however, the testator to make the final disposition.

Same: INSTRUCTIONS: DUTY OF JURORS. It is proper for the court to instruct the jury in will contests not to substitute their own judgment for that of the testator.

Same: UNDUE INFLUENCE: SUGGESTIONS OF COUNSEL. An instruction that if testatrix was mentally competent to make a will the fact that her counsel suggested a certain charitable bequest, which she made, which her counsel with others organized was not erroneous.

Same: MENTAL UNSOUNDNESS: EVIDENCE. Evidence that testatrix had left the settlement of an estate of which she was an executrix entirely to her co-executor, without showing any reason therefor, was inadmissible on the question of her want of capacity to make a will.

Same: EVIDENCE: TRANSACTIONS WITH DECEDENT. A person having a present, tangible and valuable interest in an estate, which will be affected by the result of a contest of the will, is disqualified from testifying to a personal transaction with decedent, even though the testimony would be adverse to the interests of such beneficiary.

Evidence: MENTAL UNSOUNDNESS: CONCLUSION. It is only competent for a non-expert witness to give his opinion of the mental unsoundness of a testator after he has first detailed sufficient facts as a basis for his opinion.

*Appeal from Mills District Court.*—HON. O. D. WHEELER, Judge.

SATURDAY, JUNE 7, 1913.

WILL contest on the grounds of unsoundness of mind and undue influence. Issue of undue influence withdrawn from the jury. Question of unsoundness of mind submitted. Ver-

dict for proponents. From an order admitting will to probate, contestants appeal.—*Affirmed.*

*John Y. Stone, Genung & Genung* and *C. E. Dean,* for appellants.

*Gillilland & Logan,* for appellees.

WITHROW, J.—I. On March 7, 1910, Elizabeth Martin executed an instrument offered for probate as her last will and testament. Prior to that she had at different times executed five or six other wills. Her husband had died years before; they had no children, nor no dependents, excepting a nephew, Roy Downs, who because of physical and mental infirmities had been the special object of solicitude of both Mr. and Mrs. Martin. During his lifetime Mr. Martin had accumulated a large estate, the bulk of which upon his death passed to his wife under his will. She had at the time of her death been a resident of Mills county for over fifty years, and with her husband and after his death, had been deeply interested in religious and charitable objects. Aside from Roy Downs, for whom she made substantial and ample provision in her will, none of her relatives had other claims upon her bounty than that resulting from their collateral relationship. She died about six months after the execution of the will in controversy. Upon the offer of her will for probate, objections were filed by some of her relatives (two sisters and nephews and nieces), charging that the execution of the instrument was procured by undue influence, and also that at the time of its execution she was of unsound mind.

The evidence introduced on the part of contestants tended to show that Mrs. Martin had many of the infirmities incident to old age, and also that there were evidences of mental weakness, indicated by despondency followed by exaltation, distrust of the motives of her friends and relatives who came to visit her, and refusal at times to see them; that she often talked to her-

1. WILLS: mental unsoundness: evidence.

self, would cry without apparent cause, would manifest feelings of anxiety without reason, would sign checks relating to her business without reading them, would forget recent important transactions, and was addicted to the frequent use of whisky, against which her nurse advised her; that during the last two years of her life her mind had become weak so that at the time of the execution of the offered instrument she was wanting in the necessary capacity to make a will. Cross-examination, however, lessened the force of much of this testimony. There also was evidence of other incidents and features of her life and habits which contestants offered in support of their charge, and which tended to support their claim, but which were not so different in general effect from those stated as to require detailed mention.

To support the charge of undue influence, the contestants depended upon the facts bearing upon unsoundness of mind and weakened and failing powers, together with the following: For some years Mrs. Martin had employed Mr. Gillilland as her business and legal adviser at a fixed annual compensation. She had relied largely upon his judgment as to the securities offered for loans, although it is shown that one time at least she declined to accept one offered loan with its security, stating that she did not care to make it. A few days prior to the execution of the instrument in controversy, feeling that her health was failing and that her end might be near, she directed her nurse to send for Mr. Gillilland to assist in the preparation of her will, the last of the previous wills executed by her not fully meeting her desires. Her adviser came, accompanied by his partner, Mr. Logan. According to the testimony of the nurse, Mrs. Martin told her attorney that she wished to make a will the heirs could not break. All of the testimony as to this transaction fairly shows that there was at the time a full discussion between Mrs. Martin and her counsel as to the disposition she wished to make of her property. She recognized her accepted duty towards Roy Downs, and wished suitable provision to be made for his support. She said that

she did not care to leave anything to her sister, Mrs. Anderson, as she had plenty for her comfort during her life. Her inclination, after a few substantial personal bequests, and for the support of Roy Downs, was to dispose of her estate by giving it to religious and charitable purposes. Mr. Gillilland suggested that if she was so disposed, a gift to Tabor College would be along the lines of her general purpose. To this she objected, stating that she wanted to leave her money where her husband's business had been, in Mills county. It was then suggested by Mr. Gillilland that, as she wished to make a gift to perpetuate her memory, she recognize the Y. M. C. A. of Glenwood. This seemed to appeal to her, and finally after discussing the plans and work of the association she decided to make it a beneficiary. At this time the organization in Glenwood had not been completed, and her counsel advised a postponement in executing the will for a few days. This was agreed to; and on the following day the organization of the Y. M. C. A. in Glenwood was perfected, Mr. Gillilland and Mr. Logan being active in the movement. A few days later the will was executed, carrying bequests to one sister, nephews, nieces, provision for Roy Downs, and substantial gifts to a hospital at Omaha, to one at Council Bluffs, to Martin's Chapel, the church home of her husband and herself, and to the Glenwood Library. To the Y. M. C. A. of Glenwood she bequeathed the sum of $10,000, to be known as the Elizabeth Martin memorial fund, with a further sum of $5,000 to be a part of said fund, the income of the latter to be devoted to the support of Roy Downs during his lifetime. The estate disposed of was about $40,000 in value.

It is claimed by the contestants that the will as thus executed carried out the purpose of Mr. Gillilland and his associate, Mr. Logan, and not that of Mrs. Martin; that the nurse who was present at the time it was first considered was not permitted to remain in the room while the subject was under discussion; and that Mr. Logan accompanied his associate to aid by their joint efforts in procuring the gift to the

Y. M. C. A. It appears, however, that the nurse first suggested that she should leave the room, and that Mr. Logan had gone to assist Mr. Gillilland who, by reason of an injured arm, was unable to write. Upon the conclusion of contestants' case in chief the court withdrew from the consideration of the jury the question of undue influence.

The evidence on the part of the proponents tended to show that Mrs. Martin was a woman of good mental powers for her years; that she had a quick and accurate understanding of her business affairs; that the use of liquor which had been claimed to be excessive was moderate, not as a beverage, but to secure relief from an irritation of the throat. Friends and neighbors who had known her for many years visited her about the time of the execution of the will, before and after, and saw nothing to indicate unsoundness of mind; and a physician who had treated her at different times called upon her late in March following the time the will was signed and testified that she was then of sound mind. It is unnecessary to set out the testimony more in detail. Enough has been presented to indicate a conflict in facts. It was shown that in its general terms and purposes, excepting the gift to the Y. M. C. A., the will was in substantial harmony with previous wills, varying in details where change to her seemed proper, and that at the time of its execution she intelligently considered its terms and appreciated its effect.

We have set out at considerable length so much of the testimony as will indicate the nature of the fact in controversy, which does not differ materially in a general way from many other cases of this character. Upon the facts the jury returned a verdict for the proponents. The verdict has support in the evidence. We turn then to a consideration of the errors urged.

II. The first error assigned is that the verdict is against the weight of the evidence. This has been considered above in a general way. More definite treatment is not required. There was no error in submitting the case to the jury.

III. The second and third assignments of error relate to the charge of undue influence and the action of the lower court in withdrawing that question from the jury. The relation existing between Mrs. Martin and Mr. Gilliland was that of attorney or business adviser and client. Where it is shown that confidence and reliance is reposed in him, and the attorney secures from his client that which is to his own advantage or for the benefit of an object in which he is interested, without reasonable explanation for such gift, the burden of proof rests upon him to show the transaction was in good faith. *Good v. Zook,* 116 Iowa, 582. In the present case, however, the evidence on the part of contestants quite clearly showed that Mrs. Martin sought her counsel for advice; that she was not clear as to the best use to make of her property, but that she had a general purpose which she desired to carry out, and wished to be advised as to the objects of a religious character most worthy to be remembered. She, of course, had the right to call upon her business agent for such advice, and he had the right, and in view of their relations, it was a duty to meet her request, so long as by so doing he did not violate the confidence of his relation to her. In this case Mr. Gillilland did not profit personally by the will, nor did his associate. True, an organization in which both were interested received substantial recognition. It was along the line of Mrs. Martin's expressed desire. Under such a state of facts as here appear, there did not arise such a condition as to raise reasonable question as to the good faith of her adviser or to change the burden of proof. On the contrary, the record was so wanting in facts to sustain the charge of undue influence that the lower court was warranted in its action in taking that question from the jury and in giving instruction No. 20, of which complaint is made.

2. SAME: undue influence: evidence.

IV. The nineteenth instruction is criticised. In it the jury was told that "as her legal adviser he (Gillilland) had the

right, and it was his duty, to assist her in arranging the dis-
position of her property and to make such
suggestions as would assist her in determining
what disposition she wished to make thereof,
leaving to her, however, the right to decide what disposition
she would make." We find no error in the instruction. As
qualified, it correctly gives the law.

*3. SAME: suggestions of counsel.*

V. The fifth assignment of error criticises the matter im-
mediately preceding the nineteenth instruction, in view of the
evidence introduced and withdrawn upon the question of undue
influence. The assignment is wanting in
definiteness; but, assuming it to relate to the
eighteenth instruction, we find in it no error,
as it clearly states the rule that the juries have not the right
to substitute their own judgment for that of the testatrix. We
believe this rule cannot be too strongly emphasized in present-
ing to trial juries cases of this nature, when feelings of sym-
pathy may be urged and are sometimes successful in over-
throwing a rational and intelligent disposition of property
by wills.

*4. SAME: instructions: duty of jurors.*

VI. Error is charged in instruction No. 21, wherein the
jury were told that if testatrix had capacity to make a will
it would be immaterial that the suggestion as to the Y. M.
C. A. came from Mr. Gillilland, and that
neither would it be material that he, with
others, organized the association at Glenwood
for the purpose of enabling her to make such a bequest. Quali-
fied, as the instruction was, by the conditions as to her mental
capacity, there was no error.

*5. SAME: undue influence: suggestions of counsel.*

VII. Objection was sustained to the offer by contestants
of the probate records of Mills county, showing the proceedings
in the estate of Milton Martin, husband of testatrix, its pur-
pose being to show that she was joint executrix,
and that the estate has never been settled.
A colloquy of counsel at the time of the offer
disclosed the fact that the estate had been settled, with the

*6. SAME: mental unsoundness: evidence.*

exception of the matter relating to Roy Downs, and that there could be no final settlement during his lifetime. The most that could be claimed for this evidence would be that it tended to establish, by negative proof, that, although joint executrix of a large estate, Mrs. Martin took no interest in its settlement. Why she chose to leave the transaction of its business to her coexecutor we cannot conclude from the record, nor can we infer from it that such was because of a want of capacity. The ruling was right.

VIII. A witness, Marian Kemp, offered by contestants, was not permitted to testify as to personal transactions with decedent, she being a beneficiary under the will. This is presented as error. It is claimed that her testimony was adverse to her interest, and therefore not within the prohibition of the statute; that under the will she would receive $500; that she would have testified against her interest, and if her evidence prevailed with the jury she would lose her bequest, and, not being an heir, would receive nothing. Code, section 4604, provides that "no person . . . interested in the event of any action shall be permitted to testify to personal transactions with a decedent, against . . . a legatee or devisee of such deceased person," etc. Broadly stated, the position of counsel for appellants is that to disqualify the witness her interest must be adverse to that of decedent or her representatives, or adverse to the party against whom the testimony is offered. It will be conceded that there is force in the contention. The proposition has support in many states, where the holdings are that, unless the interest is adverse, the reason for the rule fails and the statute does not apply. This court, however, has adopted the construction that where it is shown that the witness is interested in the event of the suit, that interest being a present, tangible, and valuable one which may be increased or diminished by the result of the action, the prohibition of the statute applies, and the ruling of the lower court was in harmony with it. *Donnell, Adm'r, v. Braden,* 70 Iowa, 553.

7. SAME: evidence: transactions with decedent.

IX. A witness, M. F. Depree, offered on the part of contestants, was asked to state "what difference you saw or observed in her physical condition or the condition of her mind from the past years, and the last two years."

**8. EVIDENCE: mental unsoundness: conclusion.** An objection to the competency of the witness and to the offered testimony was sustained. The witness was then asked to state "what you observed in her mind, as to whether she could remember or concentrate her mind." To this the same objection was made. To these rulings contestants excepted and now claim error, relying upon *Manatt v. Scott*, 106 Iowa, 212. It is competent for a witness to relate facts upon which to his mind mental unsoundness may depend, and if proper basis is laid to then give his opinion. Contained in the questions above are elements of conclusion as distinguished from facts, which warranted the lower court in its ruling. Other questions to the same effect were asked the witness, which he was not permitted to answer. In addition to the objection particularly urged, they were leading in character. We cannot say that the court erred in not permitting them to be answered. The questions not having been answered, there was no basis for the opinion of the witness as a nonexpert as to the mental condition of Mrs. Martin.

Upon the whole record we find no substantial error, and the order of the lower court in admitting the will to probate is—*Affirmed.*