HAZEL OLSEN, also known as HAZEL OLSON, et al., appellees, v.
CORPORATION OF NEW MELLERAY et al., appellants.

No. 48277.

(Reported in 60 N.W.2d 832)

408

November 17, 1953.

Rehearing Denied January 15, 1954.

Schoenthaler & Lee, of Maquoketa, and Wayne G. Cook of Cook, Blair & Balluf, of Davenport, for appellants.

Bannister, Carpenter, Ahlers & Cooney, of Des Moines, Louis P. Sheahan and James F. Sullivan, both of St. Paul, Minnesota, and Walter McCarthy, of Maquoketa, for appellees.

LARSON, J.—The testator, James F. Feeney, unmarried and a resident of Maquoketa, Jackson County, Iowa, died on the 28th of February, 1950, at the age of seventy-two years. He had spent, with the exception of the last three or four years, his entire life on a 320-acre farm in that county, living with his sister Bridget who was a spinster. She died on January 23, 1950, at the age of seventy-four years, the last of testator's six brothers and sisters who preceded him in death. In July 1947 James F. Feeney and his sister Bridget called at the office of Attorney Frank A. O'Connor in Dubuque, Iowa, for the purpose of having their wills prepared. After some discussion Mr. O'Connor explained that he was no longer active in the practice, and turned the Feeneys over to his son Francis J. O'Connor to confer with them and attend to their work. After several conferences in the office of Attorney Francis J. O'Connor relative to the provisions of the respective wills of James F. Feeney and Bridget Feeney, the will of Bridget was drawn and executed in that office on October 9, 1947. Her estate amounted to approximately $20,000 and, after making certain bequests, she left the residue of her estate to her three nieces, two of whom are contestants in this case, and one, Edna Bartak, was made a defendant in this action.

James F. Feeney died owning property valued at between $68,000 and $72,000.

On July 28, 1948, the will challenged herein was prepared in the law offices of Frank A. and Francis J. O'Connor, was signed by the testator, James F. Feeney, and witnessed by E. Marshall Thomas and Francis J. O'Connor. Subsequent to

another conference between testator and Attorney Francis J. O'Connor in September 1949, the attorney prepared the codicil contested herein, drove to Maquoketa where it was signed by testator and witnessed by Francis J. O'Connor and a Doctor Jordan of Maquoketa, Iowa. Under provisions of the will and the codicil the greater part of the estate was devised to the proponent Society for the Propagation of the Faith, an Iowa corporation, whose general purposes are "to help along missions at home and foreign." The affairs of this corporation were handled by Monsignor John M. Wolfe, the executive secretary and treasurer since 1925. Attorney Frank A. O'Connor was a director of the corporation, and the O'Connor firm had been the attorneys for the corporation for some eight or ten years. It was contestants' main contention that the undue influence was exercised by the proponent corporation acting through one or more of the three persons, John M. Wolfe, Frank A. O'Connor, and Francis J. O'Connor. The contestants Hazel Olsen and Mary Feeney are nieces, and contestant James Howard Feeney is a nephew of the testator, and all live outside the State of Iowa. The nieces received small bequests and the nephew was not mentioned in the will or codicil.

At the close of plaintiffs' testimony, proponent's motion to strike all issues was sustained except the issue of undue influence by the Society for the Propagation of the Faith in obtaining its purported bequests. The motion of proponent for a directed verdict at the close of all testimony was overruled and the jury found for the contestants. The court then overruled proponent's motion for judgment notwithstanding the verdict, and motion for a new trial. Proponent appealed, assigning several errors which we will consider herein.

Proponent's major assignment of error and the fundamental and paramount question in the case is whether or not the court erred in failing to dismiss contestants' petition and in overruling proponent's motion to withdraw from the consideration of the jury the issue of undue influence. It is urged that contestants failed in their burden to establish sufficient evidence of undue influence to present a jury question.

The only issue submitted to the jury for consideration was whether or not Item Six and subparagraph (18) of paragraph

(d) of Item Seven of the will, and all the codicil thereto, pertaining to bequests to the Society for the Propagation of the Faith, were procured by undue influence. Item Six provides:

"Item Six: I give and bequeath to the Society for the Propagation of the Faith, an Iowa corporation, in memory of myself and my sister, Bridget Feeney, the sum of One Thousand Dollars ($1,000.00).

"Item Seven: * * * (d) * * * (18). All the rest, residue and remainder of my estate, I give, devise and bequeath to the Society for the Propagation of the Faith, an Iowa corporation."

The codicil's provisions reduced greatly the bequests for the contestant nieces and defendant niece, and eliminated or reduced other bequests, and confirmed the will in all other respects.

This trial, as in other similar cases heretofore considered by this court, was lengthy and the record is voluminous. Able counsel for both parties have submitted rather extensive briefs and arguments in which both the facts and authorities are generously reviewed. The official Reports of this state and of other states are replete with records of litigation over the validity of wills. Too often the basest traits of character and habits are emphasized to attempt to show the instability of the testator. We cannot, within the limits of a reasonably brief opinion, review all the evidence nor all the authorities cited us in this field of law. The legal propositions involved are not too difficult nor do we believe that they are in serious dispute. A few pertinent ones that are applicable we shall set out at the start.

I. The general and well-accepted rule in this state is that influence, to be undue, must be such as to substitute the will of the person or persons exercising the influence for that of the testator, thereby making the writing express, not the purpose and intent of the testator, but that of the person or persons exercising the undue influence. It must be equivalent to moral coercion and must operate at the very time the will is made, and must dominate and control the making of it. If there is sufficient proper evidence of that fact and the jury so finds it to be true, then the will or the involved provisions thereof are invalidated. Worth v. Pierson, 208 Iowa 353, 223 N.W. 752;

In re Estate of Ramsdell, 215 Iowa 1374, 244 N.W. 744; In re Estate of Klein, 241 Iowa 1103, 42 N.W.2d 593; In re Estate of Rogers, 242 Iowa 627, 47 N.W.2d 818, and cases cited therein. Direct proof is seldom available in such contests, and this one is no exception, but we have held many times that undue influence may be and usually is proven by circumstantial evidence. Shaw v. Duro, 234 Iowa 778, 14 N.W.2d 241; Monahan v. Roderick, 183 Iowa 1, 166 N.W. 725; In re Estate of Telsrow, 237 Iowa 672, 22 N.W.2d 792; In re Estate of Farlow, 243 Iowa 15, 50 N.W.2d 561; 68 C. J., Wills, section 466, pages 780, 781. While the burden of proof remains with the contestants, the law is well settled that, in considering the sufficiency of the evidence to support the finding of the jury, properly introduced evidence must be viewed in the light most favorable to the contestants, giving them the benefit of all permissible inferences. In re Estate of Telsrow, supra, 237 Iowa 672, 22 N.W.2d 792; In re Estate of Farlow, supra, 243 Iowa 15, 50 N.W.2d 561; In re Estate of Ankeny, 238 Iowa 754, 28 N.W.2d 414; In re Estate of Rogers, supra, 242 Iowa 627, 635, 47 N.W.2d 818, 823, and citations.

II. In view of the facts already set out, it may be well to consider now the weight to be given evidence that an attorney who drew a contested will, was present at its execution, and received a bequest either to himself or a cause in which he was interested, should be given in such a contest. In Graham v. Courtright, 180 Iowa 394, 407, 161 N.W. 774, 778, we said:

"The relations which excite suspicion in transactions inter vivos—friendship, confidence and trust, affection, personal obligations—may, and usually do, justify and properly give direction to testamentary dispositions. All that can be said is that the existence of a confidential relation, such as that of guardian and ward, attorney and client, religious adviser and layman, and the like, affords peculiar opportunities for unduly exercising influence over the mind; and, where the dominant party in such relation initiates the preparation of the will, or gives directions as to its contents to the scrivener, or writes it himself—in other words, is active either in its preparation or execution, and is

made a beneficiary thereunder—a suspicion arises that the benefaction may have resulted from the exertion of undue influence over the testator, rather than from his free volition."

Such suspicion, of course, does not amount to a presumption, and its weight is further governed by other circumstances. At best, such wills are certainly not looked upon with favor, and the court should cautiously and carefully examine into the circumstances which were attendant upon its execution. In re Estate of Ankeny, supra, 238 Iowa 754, 28 N.W.2d 414. Some such predicating circumstances we will here consider, for it was alleged that the testator was weak-willed, easily influenced by one he trusted, and had a deteriorating mind; that the bequest was unnatural and unreasonable; and that the proponent Society, acting through the attorney or attorneys and its executive secretary, substituted its will for that of testator in providing the benefits for the Society. We said further in the Courtright case that such suspicion may arise to an inference if the legacy were large compared to the total value of the estate. This inference is sufficient to put the court on inquiry, but to justify the inference of the perpetration of fraud that the jury may consider, some other indicia of undue influence must appear, such as we have referred to above. Much depends upon the facts—facts that show or tend to show or refute the exercise of undue influence by one standing in a fiduciary relationship. When the circumstances belie any unnatural or unreasonable bequests, even the fiduciary relationship of attorney and client, plus the disposition to seek funds for a cause the attorney favors, will not prove undue influence. In re Will of Martin, 166 Iowa 233, 142 N.W. 74.

However, here James F. Feeney, with his sister Bridget, visited the law office of Frank A. O'Connor in Dubuque, Iowa, for the purpose of drawing their wills, in July 1947. After several visits the will in issue was drawn by Francis J. O'Connor. The will was executed in that office on July 28, 1948, and kept in the law office. After many minor bequests, the will of the testator, James F. Feeney, provided for a trust fund out of which money was to be available for the needs of his sister Bridget, including all of the income and $6000 per year, if she

needed it, from the principal. The residue, which the jury could find was a very large sum of money, and which proved to be so, was bequeathed to the Society for the Propagation of the Faith, a religious and charitable organization. Frank A. O'Connor was a director of the Society, and the law firm in which he and his son Francis O'Connor were members was considered by the Society president as counsel for the Society. The codicil involved herein executed October 1, 1949, reduced and eliminated several bequests as follows: Hazel Olsen's bequest was reduced from $4000 to $1000; Mary Feeney's was reduced from $4000 to $1000; Edna Bartak's was reduced from $3000 to $500; Eunice Brown's bequest of $100 was canceled; and John Ryan's was reduced from $500 to $100. This, the contestants maintain, would result in a larger residue to be left to the Society under Item Seven (d) (18) of the will and was a further circumstance tending to prove an unnatural devise of the testator. That a will is unnatural, unjust or unreasonable, is a proper circumstance, to be considered along with other evidence that undue influence was exerted, as tending to confirm the claim of undue influence, see In re Estate of Telsrow, supra, 237 Iowa 672, 22 N.W.2d 792; In re Estate of Eiker, 233 Iowa 315, 6 N.W.2d 318, and cases cited; annotations 66 A. L. R. 228, 250. In this regard, the reduction of the bequests in the codicil to his blood relatives, and for no apparent reason the exclusion of the bequest to Eunice Brown and a sharp reduction of the bequest to his faithful hand, John Ryan, to whom he had told others he was going to leave his town house, but did not, is at least a relevant circumstance.

Proponent strongly contends that the will and codicil show testator's paramount concern after his death was his sister's welfare, and intended no large sum to be left in residue. This argument is not conclusive, for his sister was older than he and quite ill. She had an estate of her own of some $20,000, and the jury could believe it quite sufficient considering her age and health. On the contrary it seems the jury might well find in these facts a circumstance indicative of both weak-mindedness of the testator and undue influence of the attorney.

III. As an additional circumstance, contestants of-

fered testimony to show testator's weak mental condition at or near the time of the execution of the will and codicil. We turn then to that testimony on behalf of contestants which they contend relates facts showing lack of mental capacity of James F. Feeney, the testator. The evidence produced by contestants was intended to show lack of testamentary capacity, but as it fell short of that goal in the view of the trial court, that issue was removed from the jury. However, under the rule in Brogan v. Lynch, 204 Iowa 260, 264, 214 N.W. 514, 516, which states: "The question of undue influence, in a case of this kind, cannot be separated from the question of testamentary capacity; and conduct which might be held insufficient to influence unduly a person of normal mental strength might be sufficient to operate upon a failing mind", the court permitted the evidence to be considered as bearing on the question of whether or not testator had such a failing mind, and whether or not it was subject to any influence that might herein be found undue. Conduct which might be insufficient to influence unduly a person of normal mental strength might be sufficient to operate on a failing mind. In re Estate of Telsrow, supra, 237 Iowa 672, at 677, 22 N.W.2d 792, 796.

Hazel Margaret Olsen testified for the contestants that when she visited her uncle, James F. Feeney, in March 1948 and was at his home in Maquoketa, Iowa, several days, she observed that he did not know her; that he was cross and irritable; nervous and jumpy; that he paced the floor and frequently made exclamations such as "When all is lost, when all is lost, we still have hope"; that when fixing the furnace, though he did not leave the house, he would dress in a heavy coat, winter cap and over-shoes, and carry a flashlight lantern; that he was on the move, jumping in and out of bed at all hours, and that he dressed for church by removing one dirty shirt and putting on another; that he had a silly grin on his face and interrupted conversations between herself and her aunt, making exclamations that were not connected with the conversation; that living conditions were deplorable, dirty and unkempt. In her opinion James F. Feeney was mentally deficient and of unsound mind. She next observed him at her Aunt Bridget's funeral and his actions

were the same or worse, spitting on the floor and disregarding all good health habits. She took him to a Dubuque hospital, where he died a short time later.

Clarence Denlinger, a farmer living a mile from testator's farm, testified that he had known James F. Feeney all his life; that Feeney's actions were queer, always fidgety, wriggling around while being talked to, and that he would leave without finishing the conversation; that even when it was one hundred in the shade, he would go around with a sheepskin coat and overshoes; that he carried a jug of water in his car because there was no water like his own; that he noticed a change in the last five years, and you could not talk to him because he would jump from one subject to another, forget quickly, and would repeat himself. The witness said he was not strong-minded, but was weak-willed. During the past five years his eyes had a change and they had a starey look to them. His eating habits changed and he would not eat anything that was not cooked. Water he drank had to be out of the barrel, not out of the fresh water-spout. He wore three vests winter and summer; had to have Bridget help him dress; would bed cattle with old straw used for horse bedding; and wiped off the nose of hogs before ringing them. In his opinion James F. Feeney was childish, and had been getting more so of late years. Witness believed he could be easily influenced by people in whom he had confidence and respect. In witness's opinion testator was not rational during the last five years, but could not say he was insane.

Dan Leffert was called as a witness on behalf of contestants and testified that he had known James F. Feeney since 1884 and worked for him from Easter Monday until October in 1948. He also had made testator's income tax returns for several years. He stated that Feeney was extremely nervous and would fall to pieces if things did not go right; that he had not gone beyond the "4th reader" in school; that he repeated himself and had a poor memory; that he could not repair farm machinery, did not attend church regularly, and was not too clean in the past five years. In witness's opinion testator was not just in the best mind, and he would estimate he was not sound; that testator was the type of person who could be influenced by a person in

whom he had trust and confidence. Witness also stated that James F. Feeney had had a quarrel with Father Lussbach when he went to put concrete posts in the Feeney cemetery lot in St. Francis Parish at Otter Creek, and testator stated he would not enter the Otter Creek church property again.

Mary Clark, a practical nurse, was called as a witness by contestants and stated that she was employed by James F. Feeney between the 18th and 25th of November 1949 until the last of February 1950. Witness testified that he dressed heavily and tried to go outside to a toilet, when there was none outside but two inside, and gave as a reason, no privacy in the house; that he was nervous, prowled at night, was afraid of death, calling the priest on a sick call at times; that his conversation was jumpy, and that the place was in a terrible condition when she got there, with dirt and no bedding. Witness would say he was a weak-minded individual. She also stated Mr. Feeney had a sort of starey look, wanted the doctor quite often and that at first it was Doctor Jordan and later Doctor Swift who attended him; that he used the floor on occasion for bathroom facilities instead of going to the toilet. She further thought at times Mr. Feeney's mind was sound and at times it was not. He did pay her by check when reminded, and testator would have trouble writing them. Mrs. Mary O'Brien arranged for her to work the first time and Attorney O'Connor the second time. Mr. Feeney spoke kindly of Mrs. Olsen and had her called when Bridget got real bad.

Mrs. Sarah Kinsella, of Dubuque, a licensed practical nurse, took care of Bridget Feeney for a week in September 1949 and testified to the same conditions and actions as Mary Clark. She had cared for mental patients in St. Joseph's Sanitarium in Dubuque, and from her experience and observation her opinion was that testator was not of sound mind at that time, which was just before the execution of the codicil involved herein.

There were other witnesses who related similar observations to show, on the part of the contestants, the mental deterioration of the testator, but it is merely cumulative and we will pass next to the medical testimony.

IV. Dr. F. J. Swift, Jr., a doctor of medicine, of Maquoketa, testified that he treated the testator from December 4, 1949,

almost daily until his death. He said Mr. Feeney had "a moderately severe and severe case of arteriosclerosis", which is a permanent and progressive condition, a disease of the arteries. He stated Mr. Feeney worried many doctors by calling them at night and that he was called four times one day; that Feeney required a great deal of reassurance. He did not think Feeney unbalanced, but that he was very nervous, and thought his actions were somewhat due to his physical ailment.

Contestants called as a witness Dr. E. V. Andrews, M.D., of Maquoketa, Iowa, a general practitioner who did not know James F. Feeney, but dealt with arteriosclerosis cases every day in his practice as well as mentally-unbalanced people. He was asked the general hypothetical question, with the evidence testified to by witnesses for the contestants as its basis, and said, in his opinion the hypothetical man had a progressive mental deterioration; that the man was mentally unbalanced; that he was unsound; that he may have periods of remission which would not take him all the way back; that the judgment of a person like that would not be good; that the facts related present a picture of arteriosclerosis, senile dementia. While many of the observations related by the witness concern only the infirmities of old age, yet there are others which indicate also a mental disturbance showing the bewilderment, insecurity, confusion, and frustration of the testator, and while this evidence is perhaps not the strongest, there is, we believe, sufficient showing here to permit the jury to pass upon testator's state of mind and to decide whether or not he could be or was easily influenced by someone he admired and respected.

V. Proponent contends, even if this be so and the fiduciary relations are admitted, that this is not enough, for it must also appear that Francis J. O'Connor, Frank A. O'Connor, or John M. Wolfe, individually or jointly, were acting for and in behalf of the Society before it could be charged with unduly influencing testator, James F. Feeney. We do not believe it here necessary to pass on this contention as a matter of law. Proponent further contends that while opportunity and disposition to exercise undue influence are properly to be considered, proof of such opportunity and disposition is by itself in-

sufficient. It is true that importunity, request and persuasion that do not control the will are not enough. In re Estate of Heller, 233 Iowa 1356, 11 N.W.2d 586; 68 C. J., Wills, section 472, pages 791, 792. However, contestants offered testimony by witness Mrs. Charles O'Brien who related a conversation in March 1950 with Monsignor John M. Wolfe, the Executive Secretary for the Society for the Propagation of the Faith, over objections later to be considered, relative to the challenged will and codicil. She was asked:

"Q. Did Monsignor John M. Wolfe make any statement to you concerning any activity on his part, either alone or in conjunction with any other person or persons? A. Yes, he did.

"Q. Did he, Monsignor John M. Wolfe, make any statement to you concerning any such activity on his part or that of anybody else in conjunction with him in regard to the challenged will and challenged codicil, or either or both of them?

"The Court: * * * I think the answer was in the affirmative.

"Q. Will you state what he then said to you in that regard? A. * * * Msgr. Wolfe said that this Will was two years—they were two years making this Will and the O'Connors and himself, and they were working on it for two years rather, and it was a wonderful Will and Francis O'Connor, Jr., would go far if his health kept up."

While this testimony was correctly limited to evidence of any part Wolfe may have taken, and to show his disposition to so act, it seems clear to us that the jury might well have found from this testimony the means by which the Society exercised the influence upon the testator, directly or indirectly. Direct influence could be found from testimony, if believed, that Wolfe had told Hazel Olsen and the named executor and trustee, Raymond Feeney, that he had visited at the Feeney home, blessed the house, and that they were old acquaintances. Wolfe denied this, but the jury could well believe it true. Indirect influence, through the attorney or attorneys, could be found from the fact, if believed, that he, as representative of the Society, signed a memorandum or receipt that the Society would use the money as Feeney wished. This receipt was brought to him by Francis

J. O'Connor after O'Connor had drafted it, to satisfy the demands of James F. Feeney that he have something to show for the money bequeathed to the Society.

Any relationship between Monsignor Wolfe and Francis J. O'Connor and Frank A. O'Connor and the Society, and any joint purpose they may have had, most naturally could not be proven by substantive facts or direct evidence. We have repeatedly said such facts may be and usually are proven by circumstantial evidence. In re Estate of Farlow, supra, 243 Iowa 15, 16, 50 N.W.2d 561, and cited cases. We feel satisfied that there was sufficient evidence from which a jury might find that each of the three, Monsignor Wolfe, Francis J. O'Connor and Frank A. O'Connor, had the opportunity and the disposition to exercise influence on the testator on behalf of the Society.

It may be well also to point out here that contestants' witness Mrs. Quillen, a nurse, testified that both of the O'Connors paid visits to the hospital during Feeney's last illness, and Mr. Feeney, the testator, had made repeated statements that he had made the bequest to the Society on the advice of Mr. O'Connor, and that, while worrying about it, he had said that he left it up to Mr. O'Connor and that "if he thought that was the thing to do he would do it." He further mentioned, in justification of his act, that his relatives had not been too considerate of him.

At least we feel the circumstances related were sufficient to permit the jury to say whether or not by these means the Society exercised undue influence upon James F. Feeney, causing him to provide the sizable bequest to the Society, not by his will, but by that of the Society. We are not saying by this evidence they should so find, but merely that they could so find, as it appears to us to furnish evidence more substantial than in some other similar cases decided by this court. We are not critical of the efforts of the Society, the secretary, or the attorneys, for in their natural desire or disposition to obtain funds for this worthy cause they furnished in the eyes of the law one of the elements, viz., disposition, which go to determine undue influence. Certainly here the efforts of the attorney to keep testator from doing that which the jury could have found to have been his desire or will when he went to the law office, viz.,

obtaining salvation with large sums for Masses, rather than being charitable, and which the jury could further find was an error of the attorney in believing that testator was seeking a charity to benefit, rather than a purchase, could bring this attorney into the undesirable position of being charged with substituting his will for that of the testator; even though, admittedly, the attorney's purpose was a more noble cause. 57 Am. Jur., section 355, pages 260, 261. Yet such acts can and will often be found sufficient to invalidate the testamentary document, especially if connected with other special circumstances tending to show mental weakness, unnatural and unexplained bequests. The issue of whether undue influence was exercised was submitted to the jury, and they, under the circumstances, found the will regarding this bequest was not that of the testator. We will not disturb their finding. There are, we believe, far too many significant circumstances to have warranted a directed verdict for proponent. In re Estate of Telsrow, supra, 237 Iowa 672, 22 N.W.2d 792.

■ Reviewing then proponent's argument that contestants have failed to establish, by the quantum of proof necessary, that Item Six and Item Seven (d) (18) and the codicil of the last will and testament were procured by undue influence, we apply the test approved in In re Estate of Ankeny, supra, 238 Iowa 754, 760, 28 N.W.2d 414, which is one of our latest pronouncements in cases involving the question of fiduciary relationship. Four elements should appear, but they need not be established by direct evidence. Circumstantial evidence is therein held to be sufficient. These elements necessary to establish undue influence are: (1) the person be unquestionably subject to undue influence, (2) opportunity to exercise such influence and effect the wrongful purpose, (3) a disposition to influence unduly for the purpose of procuring an improper favor, and (4) the result clearly appearing to be the effect of undue influence. We also approved therein the statement in 30 Iowa L. Rev. 321, 323, on the subject of undue influence as to the elements which are necessary for a submission to the jury as follows:

"Although none of these facts, or 'elements' taken separately are sufficient to raise the jury question of undue influ-

ence, taken together a sufficient enough doubt as to the influence operating at the time of the execution of the will may be raised in order to present it as a question of fact to the jury."

Here, then, there is room for little doubt that there was the opportunity due to the fiduciary relationship of attorney and client. Circumstantial evidence which we think was sufficient to submit to the jury was properly received as to disposition to influence unduly by the Monsignor and the two attorneys. It also appears there were sufficient circumstances as to the effect appearing through the supposed influence.

We have already stated that while the circumstances and the evidence of the testator's being unquestionably susceptible to undue influence because of a weak, failing and deteriorating mind is not strong, it was enough to submit to the jury, and, along with the other facts and circumstances related, the court properly determined that the contestants had met the burden of proof toward proving sufficient facts and elements, when taken together, to present a fact question for the jury.

Much of proponent's contention and argument relates to its explanations and so-called direct testimony to deny the circumstantial evidence offered by contestants, but, as heretofore pointed out, we are not here concerned with those contentions. They were for the jury to determine as they believe the facts, and not a matter of law for us to decide.

VI. Proponent complains of Instruction No. 14-A given by the court as not a proper statement of the law, on the matter of lawyer-client relationship. Instruction No. 14-A states as follows: "You are instructed that a lawyer when he assumes to act for a client owes his undivided allegiance to that client. The relationship between a lawyer and his client is what is sometimes termed a confidential or fiduciary relationship and this relationship must be zealously protected by the lawyer. Thus, when a client comes to a lawyer to have his Will drafted, the lawyer has no right to unduly influence that client as to the disposition of his property. If the lawyer attempts to influence his client to leave his estate, or any portion thereof, to a person or corporation whom that lawyer also represents or on whose behalf he is interested, such conduct on the part of the lawyer

would be a breach of such fiduciary or confidential relationship between such lawyer and the client on whose behalf he had undertaken to draft such Will and is a circumstance which, if proven, you may properly take into consideration in arriving at your verdict."

It points to the last sentence as improper and prejudicial.

We discussed this matter upon a similar complaint in the case of In re Will of Jahn, 195 Iowa 74, 189 N.W. 974, and while we think the court might have clarified his meaning of "attempts to influence", when this instruction is read in its entirety, together with the other instructions, the jury would not be misled and no prejudicial error would result. There is no doubt a fine line here between what an attorney may or may not do in conferring with his client on the matters of bequest. It is true the attorney may suggest and advise when requested to do so, but from then on any effort to persuade or dissuade the client takes on the complexion of influence that may be found by a jury to be undue. This is particularly true if the object of the bequest is also a client of the attorney. While this instruction does not state that the influence, unless it was successful in subverting and controlling the mind and will of the testator, was not grounds for finding for the contestants, it is further explained and clarified in Instruction No. 13. Attempt to influence, of course, is only one of the elements that may be considered in cases of undue influence, and the jury was so instructed. This instruction is not in conflict with our holding in In re Will of Martin, 166 Iowa 233, 142 N.W. 74, where we approved an instruction which stated the attorney had a right to assist the client in determining what disposition she would make of her property and to make "such suggestions" as would assist her. This is not the same as "using influence", and we believe it unwise to go further than the rule announced in the Martin case.

 VII. Error is claimed for permitting the witness Mrs. Charles O'Brien to testify as to her conversation with Monsignor Wolfe in March 1950 as heretofore set out. The court permitted the answers for the purpose of what effect it might have in the minds of the jury as upholding the allegations of undue influence as it refers to the benefits derived by the Society under the

will and codicil in question. In Instruction No. 20 the court
further told the jury that if they found that the statements had
been made they could be considered "only as passing upon the
disposition, if any, upon the part of John M. Wolfe, acting in
behalf of the Society for the Propagation of the Faith, to influ-
ence James F. Feeney in making the purported will or the
codicil thereto." We have carefully examined the instruction
and find no error. We do not agree that there was no evidence
of Wolfe's efforts on behalf of the Society. He admittedly was
in charge of the affairs of the Society and signed the designated
receipt in behalf of the Society. There was also testimony that
Wolfe knew the testator and his family and had been out to the
farm and blessed the buildings. It was admissible, of course, to
show disposition on his part in behalf of the Society and as an
admission of his own activity toward the preparation of the will.
James v. Fairall, 154 Iowa 253, 134 N.W. 608, 38 L. R. A., N. S.,
731; Lundy v. Lundy, 118 Iowa 445, 92 N.W. 39; In re Estate
of Ankeny, 238 Iowa 754, 28 N.W.2d 414. It is to be noted that
this is not the case in which the declarations of one beneficiary
are being used to the prejudice of other beneficiaries, for the
challenged items are solely for the benefit of the Society. It
does not come under our rule in the Ames case, In re Will of
Ames, 51 Iowa 596, 2 N.W. 408.

VIII. Errors were assigned relating to the cred-
ibility and admissibility of the opinions of Dan Leffert, Wilbur
Cuneo and Clarence Denlinger, that James F. Feeney during the
last five years of his life was weak-willed or easily influenced;
also that Mrs. Hazel Olsen was allowed to express her opinion of
mental incapacity or unsoundness of mind of decedent James F.
Feeney on the days of March 20, 21 and 22, 1948. Both are as-
signed for the reason that no facts reasonably tending to support
such opinion were first related by the witness. It is true that non-
experts may give their opinion of mental unsoundness only after
they first testify to facts reasonably tending to support the opin-
ion. Ipsen v. Ruess, 239 Iowa 1376, at 1387, 35 N.W.2d 82, at 90,
and cases cited therein. It is also true that whether sufficient
facts have been detailed is primarily a question for the court in
the exercise of a sound legal discretion. In re Estate of Maier,

236 Iowa 960, 966, 20 N.W.2d 425, 428, and citations. We have also said we will not interfere unless it clearly appears such discretion was not properly exercised. Campfield v. Rutt, 211 Iowa 1077, 1080, 235 N.W. 59, and citations; In re Will of Diver, 214 Iowa 497, 504, 240 N.W. 622; 32 C. J. S., Evidence, section 507d, page 176. Ipsen v. Ruess, supra, 239 Iowa 1376, 35 N.W.2d 82. After a careful examination of the testimony of Mrs. Olsen we cannot say there was any abuse of discretion in permitting her to express her opinion. As to the other witnesses, we find that there was sufficient testimony tending to prove their competency to testify as to testator's being weak-willed or easily influenced. They had known the testator very well for many years and had observed him and his demeanor during the past five years of his life. While being weak-willed or easily influenced is not the same as being of unsound mind, and is only akin to it, evidence tending to show unsoundness of mind may or may not show a person is weak-willed. In Smith v. Hickenbottom, 57 Iowa 733, at 740, 11 N.W. 664, at 667, we said: "Weakness is not necessarily unsoundness", and in Parsons v. Parsons, 66 Iowa 754, 757, 21 N.W. 570, 571, we held the testimony " 'Well, his mind was weak from this on, and he was childish all summer' " was not incompetent, for it related a personal transaction or communication, and that such evidence related to a fact. A witness may testify from what he saw, that the decedent was weak physically, and we observe little or no difference in principle between such an inquiry whether it relates to the physical or mental organization, as long as it calls for facts ascertainable by observation alone and covers a reasonable period of observation. Here again we find the matter of qualification for the court's proper discretion, and from our review of the record we find no prejudicial or reversible error.

IX. We find no basis of error in assignment relating to Instruction No. 14, for the jury might well find the O'Connors were partners after Archbishop Rohlman so testified. We do not observe therein any assumption of facts, but a correct statement that on the question of undue influence the jury may take into consideration, if they find the facts to be, that the O'Connors were partners, confidential attorneys and advisers of the

testator and the Society; that Frank A. O'Connor was a director of the Society; that John M. Wolfe bore a confidential relationship to the Society as an officer; and that they could consider the justness or unjustness, reasonableness or unreasonableness of the provisions of the purported will and codicil thereto. It also stated they could consider the question of whether James F. Feeney was a religious man during his lifetime, and whether, if left to his own desires and uninfluenced by others, he would have made the provisions of the purported will and codicil for the benefit of the Society-proponent. We find nothing to misdirect or mislead the jury in this complained-of instruction.

X. Proponent also argues that the court erred in limiting the cross-examination of Dr. E. V. Andrew and not permitting the hypothetical question or questions propounded to the witness by its counsel to include any fact which it intended to prove, but which facts were not then in the record. We doubt this was the reason. Our careful examination of the record leads us to believe that the court was correct in its ruling for the reason that the question asked went far afield of the purpose of cross-examination of an expert witness. The purpose of a cross-examination of an expert is clearly to test and inquire fairly into the basis of the opinion given, and great discretion is given the trial court in such matters. In re Estate of Austin, 194 Iowa 1217, 191 N.W. 73; Bennett v. City of Marion, 119 Iowa 473, 93 N.W. 558; Brown v. Drainage Dist. No. 48, 163 Iowa 290, 143 N.W. 1077. The question involved was clearly not to test his knowledge of the subject, but was argumentative and confusing, besides giving some indication of an entire summation of its case. The trial court, we feel, did not abuse its discretion in such ruling.—Affirmed.

HAYS, C. J., and BLISS, OLIVER, GARFIELD, WENNERSTRUM, MULRONEY, and THOMPSON, JJ., concur.

SMITH, J., takes no part.